Paul MOORE, Plaintiff–Appellant,

v.

CITY OF PADUCAH; John Penrod, Mayor; Joe Viterisi, Commissioner; Robert Coleman, Commissioner; Joe Flynn, Commissioner, Defendants,

Robert E. Green, Defendant–Appellee.

No. 89–5018.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1989.

Decided Nov. 29, 1989.

Rehearing Denied Jan. 9, 1990.

See also, 6th Cir., 790 F.2d 557.

James W. Owens, argued, Paducah, Ky., for plaintiff-appellant.

Thomas J. Keuler, argued, W. David Denton, Denton & Keuler, Paducah, Ky., James W. Funk, Kimmell, Funk & Cummings, Vincennes, Ind., for defendants, defendant-appellee.

Before KRUPANSKY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

The appellant, Paul Moore, brought this action pursuant to 42 U.S.C. § 1983 against the defendant-appellee, Robert Green and the defendants, the City of Paducah, the Mayor and City Commissioners of Paducah, Kentucky, alleging that he was denied his due process right to a hearing prior to his job transfer. Moore now appeals the order of the United States District Court for the Western District of Kentucky directing a verdict in favor of the defendant, Robert Green.[1] Upon review, we conclude that the district court correctly found that no reasonable jury could find that a conspiracy existed to violate Moore's constitutional rights. Accordingly, we affirm.

I.

Moore was hired by the City of Paducah in December, 1971. In September, 1972, he became department head for the Department of Building, Electrical, Construction and Code Enforcement. Thereafter, in 1980, Robert Green, a real estate developer, initiated plans to build an Executive Inn and Convention Center in Paducah. Green

1. On appeal, Moore also alleges that the district court erred in striking all members of labor unions from the jury panel, and that the district court abused its discretion in controlling the direction and mode of presentation of his case-in-chief. However, since the case never reached the jury, and there was no evidence of a conspiracy, we need not address these issues.

had previously been the developer of a similar Executive Inn in Owensboro, Kentucky.

Shortly after the beginning of construction of the Executive Inn in Paducah, Green went to Moore's office and demanded a variance on a building code related to earthquake safety. Moore informed Green that state law did not permit him to grant a variance on that particular code. Subsequently, Green requested from the Mayor that the state be given exclusive jurisdiction over the project. Since the inspection and supervision of construction in the previous Owensboro project rested solely with the state, Green had already established a good working relationship with the state, and felt that direct negotiations with the state would expedite the completion of his present project, the Executive Inn in Paducah. Eventually, the Mayor was able to accommodate Green's request, and the state assumed exclusive jurisdiction over the project on January 16, 1981.[2] Thereafter, Moore was relieved of all inspection and supervision responsibilities over the project.[3]

On May 6, 1981, for reasons the parties soundly dispute, the City of Paducah created by ordinance a new department which was to be known as the Department of Safety and Inspection. Moore was transferred to this department as Chief Inspector by the unanimous vote of the Mayor and Commissioners, retaining his same wages and other employment and pension benefits which he previously had as Building Inspector. Since the City considered the transfer to be lateral in nature, upon advice of City Counsel, Moore was not accorded a hearing prior to his transfer.

As a result of his transfer, and in addition to this federal action, Moore brought suit in Kentucky state court alleging that his transfer without a hearing was in violation of the Kentucky Civil Rights Act. The state court found that Moore's new position as Safety Inspector had no articulable responsibilities, and as such, the transfer amounted to a reduction in grade. Since a reduction in grade is prohibited by state law except for cause and after a hearing, the court reinstated Moore to his former position and awarded all loss of wages and other employment benefits. The state court proceedings are now finalized.

As a result of the state court judgment, the City of Paducah, the Mayor, and the City Commissioners were dismissed from this federal action, rendering Green the sole defendant. In his suit against Green, Moore sought compensatory damages for damage to his reputation and for emotional distress,[4] punitive damages, and attorney's

**2.** During the period of time between the start of the project and the date the state assumed exclusive jurisdiction, Moore alleged that conflicts arose between Green and Moore over the enforcement of the Kentucky Building Code. Green denied the existence of a conflict, stating that his only wish was for the state to assume exclusive jurisdiction over the project, thereby creating a more efficient inspection process.

**3.** There was some evidence presented that Moore remained involved with the inspection process on an informal basis.

**4.** These particular damages were also sought in Moore's state court action, but were denied "since the bases of such claims were not alleged or shown." *Moore v. City of Paducah,* No. 81–CI–391 (McCracken Cir.Ct. Nov. 9, 1982). This prior state disposition may have preclusive effect over the present federal action. Arguably, Green could invoke the doctrine of defensive collateral estoppel. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970). "Defensive use of collateral estoppel

permits a defendant to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant." *Patrick v. South Central Bell Tel. Co.,* 641 F.2d 1192, 1199 n. 3 (6th Cir.1980).

Application of this doctrine requires four criteria to be met:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Detroit Police Officers Ass'n v. Young,* 824 F.2d 512, 515 (6th Cir.1987) (footnotes omitted). It appears that these criteria are satisfied in this case.

Moore's state claim, although brought pursuant to a Kentucky civil servant statute, was based on identical facts and alleged the precise

fees. However, at the close of Moore's case-in-chief, the district court granted Green's motion for a directed verdict. This timely appeal ensued.

## II.

By enacting the Civil Rights Act, Congress provided a remedy to individuals deprived of constitutional rights by an official's abuse of his position. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (overruled in part on other grounds, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Title 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit or equity, or other proper proceeding for redress....

42 U.S.C. § 1983. The critical language of the statute raises three legal issues relevant to the case at bar: (1) who is a "person" subject to suit; (2) what is the meaning of "under color of state law"; and (3) what rights does § 1983 protect.

It is well settled that municipalities and their local government units are "persons" under the statute, and are, therefore, subject to suit. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (overruling *Monroe v. Pape*, 365 U.S. 167,

81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). The *Monell* Court reasoned that municipalities were not free to violate constitutional rights and that the legislative history did not justify excluding municipalities from liability. *Id.* 436 U.S. at 700–01, 98 S.Ct. at 2040–41. Thus, the City of Paducah is a "person" under this statute.[5]

Section 1983 does not reach purely private conduct, but is aimed at action taken under color of state law. See *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The traditional definition of this language requires that the defendant have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 *reh'g denied*, 314 U.S. 707, 62 S.Ct. 51, 86 L.Ed. 565 (1941)). However, the modern approach treats "under color of state law" and "state action" as coterminous. "If the challenged conduct of [Green] constitutes state action as delimited by ... prior decisions, then that conduct [is] also action under color of state law and will support a suit under § 1983." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1983); *see also West v. Atkins*, 108 S.Ct. at 2255.[6]

In *Lugar*, the Court held that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* 457 U.S. at 937, 102 S.Ct. at 2753. Furthermore, "the party charged

issue as the one at bar—transfer without a hearing. Since Moore failed to prove his damages for emotional distress and the like at the state court, he should be estopped from relitigating them in federal court.

It should be noted, however, that collateral estoppel is an affirmative defense which must be pled or it is deemed waived. Fed.R.Civ.P. 8(c); *but see Agg v. Flanagan*, 855 F.2d 336, 344 (6th Cir.1988) (Contie, J., dissenting) (several courts *sua sponte* have raised the issue of collat-

eral estoppel). Nevertheless, this panel's discussion of Moore's Section 1983 claim is dispositive of this appeal.

5. This is not at issue on appeal, but is a necessary finding to bring Green, a private citizen, within the purview of § 1983.

6. The importance of these decisions is evidenced by the fact that non-§ 1983 state action cases are now authoritative in § 1983 cases.

with a deprivation must be a person who may fairly be said to be a state actor." *Id.* Consequently, the Mayor and City Commissioners of Paducah fall within this definition.

Finally, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States...." *West v. Atkins,* 108 S.Ct. at 2255. In the instant case, the plaintiff, Moore, alleged a deprivation of his constitutionally protected property right of employment. Specifically, Moore alleged that Green and the city officials conspired, under color of law, to deprive him of his due process right to a hearing before the transfer.[7] Since the Due Process Clause requires that an individual be given an opportunity to be heard before he is deprived of a property interest, *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), Moore states a cognizable § 1983 claim.[8]

However, the instant case is against Green, who is not a city official, but a private individual. Therefore, the narrow issue for review is whether action taken by Green is action taken "under color of state law," thereby subjecting him to liability under § 1983.

### III.

In *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), the Supreme Court addressed the "color of law" language under 18 U.S.C. § 242, the criminal counterpart of 42 U.S.C. § 1983.[9] The *Price* Court articulated that "[t]o act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Id.* at 794, 86 S.Ct. at 1157. Thus, a private party may conspire with the state and be

liable under § 1983. *See, e.g., Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (store clerk and police officer conspired to deny plaintiff service in the store because of her race); *accord Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

Therefore, Moore must prove that Green and city officials conspired together to deprive him of his pre-transfer hearing. The standard for proving a civil conspiracy was set forth in *Hooks v. Hooks,* 771 F.2d 935 (6th Cir.1985):

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* at 943–44. Employing this standard, the district court directed a verdict for the defendant ruling that, based on the findings, no jury could properly find that a conspiracy existed. Although Moore presents some circumstantial evidence, review of the briefs and district court findings reveals that there is no evidence beyond mere conjecture and speculation that an agreement existed, thus, precluding a finding of a conspiracy.

The record reflects that the Mayor and each of the City Commissioners had various reasons to effectuate the transfer. One commissioner testified as to a perceived conflict between Green and Moore which threatened further construction of

---

7. This case was settled with respect to the City of Paducah, the Mayor, and the Commissioners, leaving Green as the only defendant.

8. The district court did find that city officials transferred Moore to another position without a proper hearing. *See* ruling on Defendant's Motion for Directed Verdict at 3. It is unclear whether the court found that this amounted to a deprivation of a constitutionally protected right.

Nevertheless, this court need not address that issue since the alleged conduct was not taken under color of state law.

9. It has been held that "under color of law" means the same thing for § 1983 as it does for § 242. *Monroe v. Pape,* 365 U.S. 167, 185, 81 S.Ct. 473, 483, 5 L.Ed.2d 492 (1961).

the project. Moore also claimed that Green had meetings with city officials within one week of Moore's transfer. However, the record also indicates that complaints had been made by citizens and contractors that Moore would treat some people differently than others, and that Moore was not courteous and cooperative. In addition, Moore had filed two grievances with the City concerning Moore's loss of a City vehicle for his personal use which eventually developed into a lawsuit. Thus, there existed numerous alternative grounds for Moore's transfer.

There is no disputing the fact that Green desired to deal with state officials rather than with Moore, and that Moore took offense to this. It is also clear that it was in the City's best interest to accommodate Green to ensure the completion of the project and eventual revenues to the City. However, there is no evidence that Moore's transfer was the result of an agreement between Green and city officials.

Finding no evidence of a conspiracy, the district court granted Green's motion for a directed verdict. A motion for directed verdict, Fed.R.Civ.P. 50(a), is governed by a reasonableness standard. The court should direct a verdict for the moving party "[w]hen the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict...." *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court addressed the standard for summary judgment for a first amendment claim. The Court in *Liberty Lobby* noted the similarity between the standard for summary judgment and the standard for directed verdict. The Court stated that:

> If the defendant ... moves for ... a directed verdict based on the lack of proof of a material fact, the judge must ask himself ... whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512; *see also United States v. Bohannon*, 232 F.2d 756 (6th Cir.1956) (scintilla of evidence not enough).

The evidence proffered in this case could not reasonably support a finding that an agreement existed. Absent such a finding, there can be no conspiracy. Consequently, there was no evidence upon which a jury could reasonably find for Moore, and the district court properly granted Green's motion for directed verdict.

Accordingly, the order of the district court is AFFIRMED.

WELLFORD, Circuit Judge, concurring:

As pointed out by my colleague, Judge Celebrezze, under the facts of this case the only conspiracy damages for which defendant Green, a private citizen, might be held liable to Moore under 42 U.S.C. § 1983 was the deprivation of "an opportunity to be heard before he is deprived of a property interest" under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).[1] This is the remaining aspect of Moore's claim because he has already recovered in state court on essentially the same cause of action from the others engaged in the alleged conspiracy with Green "all loss of wages and other employment benefits." (His basic salary, to be sure, was not reduced when he was transferred). Moore cannot recover twice for the same damages and for economic value of relief already received, such as his reinstatement to his former position. *See City of Paducah v. Moore*, 662 S.W.2d 491 (Ky.App.1984).

---

1. There is a question as to whether *Loudermill* should be applied retroactively to the circumstances here. Whether there was a clearly established constitutional right to a hearing from the City in 1981 is uncertain. *See Stachura v. Truszkowski*, 763 F.2d 211 (6th Cir.1985), for an example of such retroactive application without discussion. The evidence is that Green, a private citizen, was not aware of Moore's constitutional right to a pre-transfer hearing as later set out in *Loudermill.* The city attorney was also not aware of any such right.

Under § 1983, of course, Moore may be entitled to attorney's fees and costs. Thus, his claim against Green, although limited because of his prior recovery, is more than a de minimis one. A plaintiff alleging a civil conspiracy under § 1983 is not required to prove direct evidence of the conspiratorial agreement. The conspiracy may be shown by circumstantial evidence. *McCabe's Furniture, Inc. v. La–Z–Boy Chair Co.,* 798 F.2d 323, 328 (8th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 1728, 100 L.Ed.2d 193 (1988); *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1979). The district court in its opinion also recognized this.

There is, of course, a difference between a threat or protest made by a private citizen to a public authority affecting the rights of an employee and a *conspiracy* between the protesting private citizen and the authority or municipality which may act motivated, at least in part, by the threat or protest. *See Stachura v. Truszkowski,* 763 F.2d 211 (6th Cir.1985).

Although I believe it is a close question in this case, I concur in the result reached because I can find no direct evidence of any conspiracy nor any reasonable basis for an inference that Green was involved in one. The Commonwealth of Kentucky assumed jurisdiction of the project in question on January 16, 1981, and Moore conceded that after that he "had no more responsibility, liability or *jurisdiction* on the job." (emphasis added). Moore was not transferred until May of 1981. No reasonable inference could be drawn, especially in light of the testimony of defendants, uncontradicted in most respects, that Green had any reason, after January, to want to cause the transfer of one who had no responsibility over and jurisdiction over the job in controversy.

I therefore concur in the affirmance.