**Donald NORTON, Plaintiff,**

v.

**Caron COBB, Defendant.**

**No. C89–1762.**

United States District Court,
N.D. Ohio, E.D.

Aug. 15, 1990.

Robert Troll Lynch, Lynch & Lynch, Cleveland, Ohio, for plaintiff.

Howard Mishler, Cleveland, for defendant.

MEMORANDUM AND ORDER

BATTISTI, District Judge.

This civil rights Complaint juxtaposes the issue: whether false accusations of child abuse, which result in denial of visitation

rights, state a constitutional violation cognizable under the civil rights laws? In addition to this constitutional issue, Plaintiff Donald Norton ("Norton") has also alleged several state law claims. Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant natural mother and former spouse Caron Cobb ("Cobb") has filed a Motion to Dismiss; Norton has filed a Brief in Opposition. For the following reasons, the pendent state law claims are DISMISSED *without prejudice,* and the Motion to Dismiss is GRANTED.

■ The material factual allegations can be briefly stated. Norton, the father of four and a half year old infant David Norton ("David"), is the former spouse of Defendant Cobb. Complaint, at ¶ 6. The parties married on February 14, 1984, divorced in 1986, with Cobb having custody of David and Norton having visitation rights. *Id.,* at 2. Norton alleges that Cobb "maliciously and intentionally conspired with Ms. Jennifer Metro, Theresa Thornhill, Mr. Louis Kaszas, and other agents and employees of the Lorain County Children Services Board in order to destroy the father-son relationship that existed between Plaintiff and his son." *Id.,* at ¶ 8. Cobb and the employees of the Board "attempted to and succeeded in denying visitation" between Norton and his son David. *Id.,* at ¶ 8. Because of these fraudulent allegations of sexual abuse—made in May 1988 and in March 1989, Cobb "continues to deny" Norton his visitation rights and Cobb "has been aided by the continued assistance" of the Board and its employees. *Id.* Norton alleges he has not been charged, indicted, or arrested for any criminal violations, and that various professionals—the family doctor, the emergency room staff at a hospital, and a school psychologist, have found no evidence of sexual abuse. Thus, Norton claims his constitutional right to continue a father-son relationship. *Id.,* at ¶¶ 9–10.

Norton filed this civil rights action on September 14, 1989, under 42 U.S.C. §§ 1983 and 1985 seeking solely monetary damages from Cobb.[1] Norton also alleges several pendent state law claims for infliction of emotional distress, interference with family relations, and invasion of privacy. Cobb, as noted, has filed a Motion to Dismiss under 12(b)(6).

### A. Subject Matter Jurisdiction.

■ As to the federal civil rights claims, this Court has subject matter jurisdiction under 28 U.S.C. § 1343(a)(3) and § 1331.[2] The state law tort claims—purportedly arising from a common nucleus of operative fact—invoke pendent-claim jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[3]

After reviewing the pleadings, the Motion to Dismiss, and Norton's Brief in Opposition, the constitutional claim appears to be somewhat novel and perhaps, somewhat attenuated; furthermore, the state law claims, if true, appear stronger and seem to predominate. Since federal courts are courts of limited, as opposed to general jurisdiction—*Gross v. Hougland,* 712 F.2d 1034, 1036 (6th Cir.1983) (Celebrezze, J.), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984)—and family law is-

---

1. Norton sues only Cobb and not her alleged co-conspirators. Because civil conspiracy is a tort with joint and several liability, Plaintiff may sue one conspirator, or all of them, in a judicial forum. *U.S. Industries v. Touche Ross & Co.,* 854 F.2d 1223 (10th Cir.1988). Although co-conspirators in civil rights cases are usually sued jointly, Plaintiff, as the master of his Complaint, may select the theories and sue the Defendants he wishes. The Complaint as drafted, however, could arguably represent a continuation of a bitter divorce battle in which the child is used as a pawn. Such an argument could be framed from the relief requested (solely damages).

Despite this potential argument, the Court assumes that the Complaint represents a serious civil rights question that merits thoughtful judicial consideration.

2. Despite the jurisdictional allegations that the amount in controversy exceeds $10,000—Complaint at ¶ 3—the statutory amendment to 28 U.S.C. § 1331 in 1980 abolished, for federal questions, the minimal jurisdictional amount. Prior to 1980, there was an advantage of using 28 U.S.C. § 1343 (civil rights jurisdiction) because it lacked a jurisdictional amount.

3. This Order does not address the merits of the pendent state law claims.

sues have traditionally been the province of the state courts, the doctrine of pendent jurisdiction should be scrutinized carefully.

*Gibbs, supra,* held that under Article III, federal courts had Article III power to exercise subject matter jurisdiction over an entire action (federal and state law claims) when the state law claims "derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988). However, *Gibbs* recognized that the power was discretionary, "not of plaintiff's right." *Cohill, supra,* 484 U.S. at 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d 218 (1966)); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3657.1 at 123 (2d ed. 1984). In appropriate circumstances, federal courts may decline to exercise this jurisdiction.

Discretion, concerns about fairness, judicial economy and principles of comity, are present in a number of § 1983 cases alleging sometimes novel, but also somewhat attenuated and amorphous "constitutional" torts. Because of the lure of the attorney fees statute, 42 U.S.C. § 1988, creates an incentive to transform a state law claim into a § 1983 claim, federal courts should "guard against the litigant who frames a pretextual issue solely for the purpose of having a state law claim adjudicated in the federal system." *Willard v. City of Myrtle Beach, Inc.,* 728 F.Supp. 397, 403 (D.S. C.1989) (quoting *Davis v. Pak,* 856 F.2d 648, 651 (4th Cir.1988)). Where family law and domestic relations issues weigh heavily, federal courts should approach pendent jurisdiction from an "informed sense of comity," and leave matters traditionally within the sphere of competence of the states and "peculiarly unsuited to control by federal courts"—*Drewes v. Ilnicki,* 863 F.2d 469, 471 (6th Cir.1988) (Boggs, J.) (quoting *Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1215 (6th Cir.1981))[4] to the state courts. *Davis, supra,* at 651; 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3609 at 460–61 (2d ed. 1984).

Federal courts have been reluctant—on the ground of fairness—to dismiss pendent state law claims because of the potential bar of the state statute of limitations. However, in *Cohill, supra,* the Supreme Court noted that many states have savings clauses for statutes of limitations. Ohio has such a statute—Ohio Rev.Code Ann. § 2305.19—which allows refiling of claims dismissed not on the merits. Thus, under principles of fairness and comity, federal courts, applying Ohio law, can be less reluctant to dismiss pendent claims in appropriate cases.

Several federal courts have interpreted *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139–40, as allowing courts, in their discretion, to dismiss, *sua sponte,* pendent state claims under certain factors. In *Sullivan v. Boettcher & Co.,* 714 F.Supp. 1132, 1133–34 (D.Colo.1989), Judge Carrigan listed several factors to guide the courts' discretion: 1) judicial economy 2) availability of a surer-footed reading of state law in state court,

---

**4.** In *Drewes v. Ilnicki,* 863 F.2d 469 (6th Cir. 1988), Judge Boggs summarized both the history of the domestic relations exception to diversity jurisdiction and cases where federal courts would exercise jurisdiction (particularly in tort claims) involving merely intra-family aspects in the background. *See Elam v. Montgomery County,* 573 F.Supp. 797, 801 (S.D.Ohio 1983) (plaintiff's § 1983 lawsuit concerning the wrongful deprivation of custody of his children did not ask the court to return custody of his children or declare which party was a more fit parent, but simply to adjudicate a claim for tort damages); *Raftery v. Scott,* 756 F.2d 335, 338 (4th Cir.1985) (district court could hear damages claim for intentional infliction of emotion-

al distress where former husband alleges that former wife has taken custody of child illegally). *Cf. Jagiella v. Jagiella,* 647 F.2d 561, 565 (5th Cir.1981) (diversity jurisdiction absent where tort damages action is a mere pretense and the suit is actually concerned with custody issues.)

Although federal courts have subject matter jurisdiction over federal civil rights claims, it may not be prudent to hear, in one case, pendent state law claims that arise out of domestic relations and child custody issues. Particularly where the jurisdiction is discretionary, federal courts should be wary of entertaining claims more properly heard in the courts of common pleas and their domestic relations divisions.

3) predominance of state issues compared with federal issues 4) broader scope of remedies available under state versus federal law, and 5) the potential for jury confusion. *See Braley v. Helgemo, et al.,* Case No. 84–CV–5197–DT, slip op. at 4–14 (E.D.Mich. January 23, 1985) (Guy, J.) (risk of jury confusion, lack of congruence of elements, remedies, and defenses), aff'd on other grounds *sub nom. Braley v. City of Pontiac,* 906 F.2d 220 (6th Cir.1990); *Kerby v. Commodity Resources Inc.,* 395 F.Supp. 786, 789–90 (D.Conn.1975) (Matsch, J.) (criticizing "simplistic" notion of judicial economy, stating the "quality of litigation is as important as the quantity of cases," and noting attempt to expand scope of federal remedy, unsettled area of state law, and jury confusion as factors.) Applying the above factors, it appears that the state law claims for infliction of emotional distress, interference with familial relations, and invasion of privacy predominate, that there will be a surer footed reading of state law in state court, the state law claims have broader and different elements (the § 1983 claim requires state action and the § 1985 action requires a conspiracy), and that principles of comity are particularly strong in this case.

Accordingly, in the exercise of discretion, pendent jurisdiction is declined, and the pendent state law claims are DISMISSED without prejudice.

*B. Motion to Dismiss Under 12(b)(6).*

In the Motion to Dismiss both the §§ 1983 and 1985 claims, Defendant apparently attacks the Complaint as being too general and insufficient to allege a conspiracy.[5]

Under the applicable standard for entertaining a 12(b)(6) motion, "the court must accept as true all factual allegations in the complaint," *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984), and "must deny the motion to dismiss unless it can be established

beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 279 (6th Cir.1987) (*en banc*); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). However, where evidentiary materials are not excluded by the Court—such as Affidavits and Exhibits, the Motion is deemed, under Rule 12(b), as a Motion for Summary Judgment.

This Court excludes the Affidavit and Exhibits—the pertinent inquiry is a matter of law—do the allegations, assumed to be true, state a constitutional claim?

■ In order to state a claim under § 1983, a person acting under color of law must cause a deprivation of a federal constitutional or federal statutory right. *Golden State Transit Corp. v. City of Los Angeles,* —— U.S. ——, ——, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989); *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555, 557 (1980). Although § 1983 does not reach purely private conduct, a private person, acting "under color of law," can be held liable if "he is a willful participant in joint activity with the State or its agents." *Moore v. Paducah,* 890 F.2d 831 (6th Cir.1989): 890 F.2d at 834 (quoting *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Hooks v. Hooks,* 771 F.2d 935, 943 (6th Cir.1985) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982)). Thus, a private party may conspire with a state actor and be liable for deprivation of federal rights. *Moore, supra,* at 834 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150–152, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970) (store clerk and police officer conspired to deny plaintiff service in a store because of her race.))

■ Although Norton claims that Cobb has conspired to destroy and has interfered with his constitutional right to maintain a father son or parent-child relationship, he does not state, in the Complaint or in his

---

**5.** *Defendant's Motion to Dismiss,* which borders on incoherence, relies heavily on out-dated Seventh Circuit cases that suggest a heightened standard of pleading of civil rights cases. Noticeably absent are relevant Supreme Court and Sixth Circuit authority.

Brief in Opposition to Defendant's Motion to Dismiss, any specific provision of the Constitution under which such a right may exist. Cobb assumes that this right arises under the Due Process Clause of the Fourteenth Amendment. Motion to Dismiss at 1. The Complaint seeks compensatory and punitive damages for past and present denials of visitation rights.

The deprivation of the parent child relationship has been raised, in constitutional nomenclature, as a liberty interest and as the right to association. Although most courts allowing recovery under § 1983 have grounded the right under the rubric of substantive due process—*see Bell v. City of Milwaukee*, 746 F.2d 1205, 1243–44 (7th Cir.1984)—one court has held that the parental liberty interest arises under a First Amendment right to freedom of intimate association. See *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1188–89 (10th Cir.1985).

In *Willard v. City of Myrtle Beach*, 728 F.Supp. 397 (D.S.C.1989), the Plaintiffs sued a municipality and its employees for the arrest of their seventeen year old minor son, who was charged with public intoxication and disorderly conduct. The purported constitutional deprivation—the right to association and companionship with one's child—arose from the four hours the son spent in a jail cell.

The *Willard* Court surveyed the cases allowing and disallowing recovery under § 1983 for deprivation of a parent child relationship. Expressing reluctance to recognize such a right, the Court explained:

Plaintiffs apparently assume the existence of a generally applicable constitutionally protected liberty interest inherent in the Constitution, and argue that this liberty interest should extend to create a substantive damages remedy in favor of parents for any negative emotional or psychological effects visited upon their children because of temporary detention by individual state actors. The implications of recognizing such a generalized right to contest indirect state action having an incidental effect upon familial association, however, are far-reach-

ing and cannot be overlooked by this court.

*Willard*, 728 F.Supp. at 404.

Even assuming, as an alternative holding, that a constitutionally protected parental liberty interest in the continued companionship and association with children exists under a theory of substantive due process, the Court noted that allegations of "permanent emotional and psychological harm" were not sufficient:

Significantly, every court which has recognized such a right of action has only done so within the factual context of a permanent, physical separation of parent and child, such as allegations of unlawful killing by individual state actors. Assuming the truth of plaintiffs' allegations ... it is clear that plaintiffs do not sufficiently allege a § 1983 claim—as they do not allege the total destruction of the parent-child relationship caused by unlawful action taken under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984). In any event, it is quite evident that there must be a "logical stopping place for such claims," *Trujillo*, 768 F.2d at 1190, *see also Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). Eventually, if parameters are not placed upon the permissible bounds of § 1983 litigation, it will eventually parallel remedies available under state tort law, which, as in the present case, provide an avenue of relief—albeit in most instances without a fee-entitling statute.

*Willard*, at 404.

It is unclear, absent invocation of a specific provision of the Constitution, whether there exists a generalized constitutional right of parents to associate and maintain companionship with their children. If such a right existed, a plethora of child custody decrees would be open to constitutional challenge. Even assuming, *arguendo*, that such a constitutional right may exist along with a § 1983 remedy, recovery has been limited to situations of wrongful death—where there has been a permanent, physi-

cal separation of parent and child. *Willard, supra.*

In the case *sub judice,* the allegations fall short of the wrongful death situation—which is a permanent deprivation. If Cobb is denying visitation rights, there is relief in the Domestic Relations Courts of the state. Accordingly, following *Willard,* the Court agrees that there no constitutional deprivation has been alleged.

Since claims under § 1985(3) require constitutional deprivations—*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971), and none has been stated, this claim is also DISMISSED.

Accordingly, the pendent state claims are DISMISSED without prejudice; since there is no constitutional violation, the § 1983 and § 1985 claims are DISMISSED.

IT IS SO ORDERED.