955 F.2d 44
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Connie McCoy CLARK, Plaintiff-Appellee,
v.
Billie J. UPCHURCH; Cheryl Jordan Ball, Defendants-Appellants.
 No. 91-5708.
 United States Court of Appeals, Sixth Circuit.
 Feb. 13, 1992.
 
 Before RALPH B. GUY, Jr., and ALAN E. NORRIS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, two municipal hospital nurses, appeal the denial of their motion for summary judgment, which was premised on a claim of qualified immunity. The nurses were among several defendants whom plaintiff had sued under 28 U.S.C. § 1983 for allegedly violating her Fourth and Fourteenth Amendment rights. Finding that the district court correctly determined that the constitutional rights which plaintiff claims were violated were clearly established at the time of these events and that a jury could find, if they accepted the plaintiff's version of the facts, that defendants violated these rights, we affirm the district court.
 
 I.
 
 2
 The facts pertinent to plaintiff's claims against the nurses are contested, but, in our de novo review of the qualified immunity denial, we must accept plaintiff's version of the events.[1] EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Plaintiff, Connie Clark, was involved in an auto accident on October 11, 1989. When a passenger in the other car became abusive, Clark left the scene and returned to her home. Later that evening, a local police officer--also a defendant in this case--entered Clark's apartment without her consent and arrested her, without a warrant, for the misdemeanors of drunk driving and leaving the scene of a non-fatal accident. According to this officer, Clark was "completely incoherent and unresponsive" when he arrested her. (App. at 16).
 
 
 3
 At the police station, defendant officer procured arrest warrants for Clark. While at the station, Clark agreed to submit to a breath-alcohol test, but when she was unable to blow into the equipment with enough force to produce a reading, the defendant officer took her to the county hospital. It was here that Clark encountered the two defendant nurses in this appeal, Billie J. Upchurch and Cheryl A. Jordan.
 
 
 4
 Nurse Upchurch's first acts, again according to Clark, included kicking Clark, violently jerking Clark's head, and wiping Clark's face with a rag. Upchurch then measured Clark's pulse and blood pressure despite Clark's refusal to consent to any medical treatment. Then, with defendant officer's help, Upchurch forcibly placed Clark on a gurney with her hands handcuffed behind her, aggravating the pain in Clark's broken collarbone. Clark involuntarily urinated on herself when Upchurch and the officer refused her repeated requests to use the toilet. Another defendant, a laboratory technician, then extracted a blood sample against Clark's express wishes (and without a warrant). It is unclear from the record whether it was the blood sample or the urine specimen, or both, which revealed that plaintiff had a blood-alcohol content of .213.
 
 
 5
 Nurse Jordan then entered the room and told Clark she was "stupid" and would get "exactly what she deserved for not telling them what had happened." (App. at 19-20). Jordan asked Clark if she had been catheterized for a drug screen. Clark offered to provide a urine specimen instead, but Jordan attempted to force Clark's legs apart and remove her pants to prepare Clark for catheterization. Clark, in self-defense, kicked Jordan with both legs. Jordan then summoned defendant officer and two defendant security guards. These others handcuffed Clark's right arm to the gurney and held her down, restricting her breathing and exerting additional stress on Clark's injured collarbone. Nurse Upchurch reappeared at this point; both Upchurch and Jordan were thus present during the following events.
 
 
 6
 The other defendants whom Jordan had summoned succeeded in pushing Clark's legs apart while another defendant nurse removed Clark's undergarments and forcibly catheterized her. Clark continued to scream her objections; defendants Upchurch and Jordan stood by.
 
 
 7
 When the catheterization was complete, all the defendants present (including Upchurch and Jordan) refused to pull Clark's pants and undergarments back up. They left Clark lying with her buttocks, pubic area, genitalia, and anus exposed within full view of a hospital corridor. The record does not disclose how long Clark remained in this position. She was rescued only when the defendant police officer went off duty and was relieved by another officer.
 
 
 8
 Clark's section 1983 claims against the police officer, the county, the nurses, and other defendants alleged various constitutional violations flowing from the warrantless entry into her apartment, her arrest, and the incidents at the hospital. Nurses Upchurch and Jordan moved to dismiss or, in the alternative, for summary judgment, claiming not only that Clark had failed to state a claim for which section 1983 relief could be granted, but also that they were entitled to qualified immunity. The district judge denied the nurses' motion. We assume in this appeal that the nurses were state actors for section 1983 purposes; we reach only the qualified immunity issue.
 
 II.
 
 9
 "[G]overnment officials performing discretionary functions[ ] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citations omitted).
 
 
 10
 Although defendants have attempted to characterize this case as involving only a "duty to intervene," we believe plaintiff has properly alleged a violation of the substantive due process right of pretrial detainees to be free from serious bodily intrusions, the procedural due process right to refuse or challenge unwanted medical treatment, the right to be free from warrantless extractions of bodily fluids conducted in an unreasonable manner, and the "right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary...." Kent v. Johnson, 821 F.2d 1220, 1226 (6th Cir.1987).
 
 
 11
 In a thorough opinion applying qualified immunity principles, the district judge ruled that " 'the contours of the rights' involved in this case are sufficiently clear such that reasonable state officials would understand when their actions violate these rights." Clark v. Hyde, No. 3:90-0880, slip op. at 19 (M.D.Tenn. May 21, 1991) (quoting Anderson, 483 U.S. at 640).
 
 
 12
 We agree with the district judge that the rights claimed by plaintiff were clearly established in 1989, although we express no opinion as to whether defendants did indeed violate those rights. We must disagree, however, with the judge's suggestion that the entitlement to qualified immunity is a jury question. "The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988). We note that discovery has not yet been completed in this case. Defendants may again move for summary judgment when the facts have been developed further. Although one of the purposes of allowing the appeal of an interlocutory denial of a summary judgment motion asserting qualified immunity is to avoid unnecessary litigation expenses, it is not always possible to serve this goal so early in the litigation process. In cases involving multiple actors and disputed facts, litigation may have to proceed further before the qualified immunity issue may be resolved.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Plaintiff's brief, at 35, seems to suggest that these section 1983 defendants may not appeal the district court's refusal to grant them summary judgment on the issue of qualified immunity. This claim is clearly in error. Huron Valley Hosp., Inc. v. City of Pontiac, 792 F.2d 563, 566-67 (6th Cir.), cert. denied, 479 U.S. 885 (1986)