**Christopher W. RUDY, and Alice M. Rudy, husband and wife, Plaintiffs,**

v.

**VILLAGE OF SPARTA, a municipal corporation, Devon Holmberg, Robert Smith, Chief of Police, Dale McNinch, D.O., and Butterworth Hospital Corporation, jointly and severally, Defendants.**

No. 1:95–CV–392.

United States District Court, W.D. Michigan, Southern Division.

July 17, 1996.

J. Stephen Marshall, J. Stephen Marshall Law Offices, Grand Rapids, MI, Frederick D. Dilley, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, for Plaintiffs.

Susan Klooz, Plunkett & Cooney, PC, Grand Rapids, MI, for Village of Sparta, Devon Holmberg, Robert Smith.

John C. O'Loughlin, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, for Dale McNinch, D.O., Butterworth Hosp. Corp.

Andrea D. Lundy, Frederick D. Dilley, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, for Christopher W. Rudy, plaintiff—appellant.

Andrea D. Lundy, Frederick D. Dilley, (See above), for Alice M. Rudy, husband and wife, plaintiff—appellant.

Mary Massaron Ross, Plunkett & Cooney, Detroit, MI, for Devon Holmberg, defendant—appellee.

Jon D. VanderPloeg, Smith, Haughey, Rice & Roegge, Grand Rapids, MI, for Dale McNinch, D.O., defendant—appellee.

Jon D. VanderPloeg, (See above), for Butterworth Hospital Corp., jointly and severally, defendant—appellee.

---

### OPINION

QUIST, District Judge.

This is a civil rights action wherein plaintiff, Christopher Rudy, alleges that defendants violated his rights under 42 U.S.C. § 1983 and the common law of Michigan. This action arises out of the catheterization performed on plaintiff in the Butterworth Hospital and the events that followed on the evening of May 13, 1994. Plaintiff's wife, Alice Rudy, has also alleged a loss of consortium. This matter is before the Court on defendants Village of Sparta, Robert Smith, and Devon Holmberg's motion for summary judgment,[1] defendants Butterworth Hospital and Dr. Dale McNinch's motion for summary judgment,[2] and on plaintiff's motion for leave to file a second amended complaint.

### Facts

On May 13, 1994, after consuming 12 or 13 beers and smoking two or three "joints," plaintiff was stopped for driving under the influence of alcohol by defendant Holmberg, a Village of Sparta police officer. Holmberg took plaintiff to the Kent County Sheriff's Department for a breathalyzer test late that evening. When plaintiff was unable to blow into the breathalyzer machine strong enough to produce an adequate sample, defendant Holmberg obtained a search warrant to withdraw plaintiff's blood. The nurse at the Sheriff's Department, however, refused to draw plaintiff's blood without first receiving medical clearance.

Defendant Holmberg then proceeded to Alpine Medical Center with plaintiff in his custody. At Alpine, a City of Walker police officer, Steven Wildey, refused to help Holmberg drag plaintiff into the medical center. Once inside, an Alpine nurse refused to perform the blood draw. Defendant Holmberg then transported plaintiff to Butterworth Hospital. Plaintiff claims that prior to their arrival at Butterworth, he told defendant Holmberg on two occasions that he needed to urinate. Plaintiff contends that Holmberg

---

1. Plaintiffs have voluntarily dismissed their claims against the Village of Sparta and Robert Smith. Thus, only Devon Holmberg is still sponsoring this motion for summary judgment.

2. Defendants Butterworth Hospital and McNinch do not argue that the state law claims alleged against them should be dismissed. As a result, this Court will refer to their motion, incorrectly titled as a "Motion for Summary Disposition," as a "Motion for Partial Summary Judgment."

told him he would have to wait. Shortly before their 7 arrival at Butterworth, plaintiff fell asleep and urinated in his pants, which rendered him unable to provide a urine sample when one was requested at Butterworth Hospital.

Plaintiff claims that he cooperated fully with the physical exam, including answering questions and allowing the staff to take his vital signs and temperature. Plaintiff claims he only became combative—i.e., physically assaulting nurses, yelling, swearing, and struggling—after he was told that he would be forcibly catheterized. Plaintiff's deposition testimony states that upon waking up in Butterworth Hospital and finding himself in restraints, he merely jerked his handcuffs and asked what was going on. Plaintiff also testified that defendant Holmberg told a nurse "he's combative," and that the nurse came in five minutes later to give plaintiff a shot. Plaintiff testified that nothing happened during the five-minute interim. While other deponents indicated that plaintiff engaged in far more combative behavior before the shot was administered, this Court will accept plaintiff's version of the facts as true in reviewing the motions for summary judgment.

The shot the nurse administered was a five milligram dose of Droperidol. This drug is used as a sedative and was administered at Dr. McNinch's order according to hospital records. Dr. McNinch testified that the medical records indicate that the patient was combative as early as 11:30 P.M., and that the shot was administered twenty minutes later. Dr. McNinch also entered a written order for a urine sample to be taken from plaintiff as a screen for possible drug abuse. Dr. McNinch testified that this is standard procedure when a patient displays combative behavior. He stated that the purpose of such tests is to determine if a patient's combative behavior is caused by the existence of cocaine, amphetamines, or PCP in the patient's system. Dr. McNinch also testified that plaintiff's urine was taken for medical reasons solely as the result of his considered medical opinion.

After waiting what seemed like a long time to plaintiff, a technician asked plaintiff for a urine sample. Plaintiff was unable to void. Nurse Sue Hoefflinger (now Hotchkiss) sub-

sequently told Dr. McNinch that if he required a urine sample from plaintiff, she would "put in a Foley," or in layman's terms, catheterize plaintiff. According to Nurse Hoefflinger, Dr. McNinch then verbally ordered her to perform the catheterization. No written order concerning the catheterization was ever signed by Dr. McNinch. Shortly thereafter, the hospital technician, Mike Swartzlander, returned to the room. By plaintiff's account, Swartzlander returned with "a bag with some tubing in it." When Swartzlander asked plaintiff if he was ready to make his urine sample, the plaintiff said "no." At this point, defendant Holmberg waved his search warrant at plaintiff. After plaintiff noted that the search warrant said nothing about urine, defendant Holmberg is alleged to have grabbed plaintiff's right arm and instructed Swartzlander to "just do it." Swartzlander has testified, however, that he has only performed a catheterization on a person in police custody when ordered to do so by a doctor or a nurse. Plaintiff testified that Swartzlander then ripped plaintiff's pants and forcibly catheterized him.

Following the catheterization, plaintiff's blood was drawn. After the blood draw, plaintiff was provided with hospital pants and a shirt made of paper. During the ride back to the Kent County Sheriff's Department, plaintiff's pants ripped along the seam from the front to the back of his pants and partially down the leg. Plaintiff informed defendant Holmberg of the tear after they arrived at the jail and Holmberg had already begun the intake procedure. Plaintiff testified that Holmberg was in the intake area for less than three or four minutes while transferring custody of plaintiff. Plaintiff claims that defendant Holmberg ignored his complaint, and forced plaintiff to sit in the holding area for about six hours with his penis exposed while others were present. Defendant Holmberg claims that he never responded to plaintiff's complaint because he never heard plaintiff's complaint. Plaintiff was not given new clothes or a blanket to cover himself during his time in the holding area.

*Standard for Summary Judgment*

Summary judgment is appropriate if there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511.

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

**3.** Title 42 U.S.C. § 1983 provides as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United Stan or other person within the jurisdiction thereof to the depriva-

*Discussion*

## I. Officer Holmberg

Plaintiff alleges that defendant Holmberg violated his rights under 42 U.S.C. § 1983 and the common law of Michigan by causing plaintiff to be subjected to a forced, non-consensual catheterization, and by failing to provide plaintiff with adequate clothing after the clothes provided by the hospital were torn.

### A. *Federal Claims Arising Out of Catheterization*

Plaintiff claims that defendant Holmberg may be held liable for the catheterization because his acts violated plaintiff's protections against unreasonable searches and seizures under the Fourth Amendment, the use of excessive force under the Eight Amendment, and violated his right to procedural and substantive due process under the Fourteenth Amendment. To recover under 42 U.S.C. § 1983,[3] a plaintiff must prove two things: " '1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was *caused* by a person acting under color of state law.' " *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995) (emphasis added) (quoting *Simescu v. Emmet County Dept. of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991)). Defendant Holmberg is a public servant who was acting in his official capacity when he took plaintiff to Butterworth Hospital to obtain a blood and/or urine sample. At issue is whether defendant Holmberg caused the deprivation of any of plaintiff's federal rights.

Plaintiff contends that defendant Holmberg should be held responsible for the catheterization because he waived an inapplicable warrant in plaintiff's face, grabbed plaintiff's arm in an effort to restrain him, and told the technician who performed the catheterization, Mike Swartzlander, to "just do it." This evidence supports the proposition that

tion of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to die party injured in an action at law, suit in equity, or other proper proceeding for redress.

defendant Holmberg assisted in the procedure.

When viewed as a whole, however, the evidence clearly indicates that the procedure itself, and therefore the alleged violation of plaintiff's rights, was *caused* solely by Dr. McNinch's decision to order the catheterization, and Swartzlander's decision to follow this order. Dr. McNinch testified he normally orders such urine samples to determine if a combative patient's behavior is the result of having illegal drugs in his system. (McNinch Dep. at 27–28.) Whether plaintiff's behavior could be considered combative or not is of no relevance to this analysis. Plaintiff recounted that Swartzlander initially asked him for a urine sample, but that plaintiff was unable to produce one. (Rudy Dep. at 65–66.) Nurse Hoefflinger then asked Dr. McNinch if she should perform a catheterization. (McNinch Dep. at 41; Hoefflinger Dep. at 32–33.) It is Nurse Hoefflinger's uncontroverted testimony that Dr. McNinch then gave her the verbal order to carry out the procedure. (Hoefflinger Dep. at 32.) Thus, defendant Holmberg exerted absolutely no influence over Dr. McNinch's decision to order the catheterization. Furthermore, Swartzlander testified that he has never catheterized anyone in police custody at the behest of anyone other than a doctor or a nurse. (Swartzlander Dep. at 8–9.) Even plaintiff testified that defendant Holmberg showed his warrant, held plaintiff down, and told Swartzlander to "just do it" only after plaintiff refused to allow Swartzlander to perform the catheterization ordered by Dr. McNinch. (Rudy Dep. at, 68.) In short, all of the testimony indicates that defendant Holmberg did not cause the catheterization to take place. *See Lovett v. Boddy,* 810 F.Supp. 844, 848–49 (W.D.Ky.1993) (police officer cannot be held liable for warrantless search where he does not cause catheterization to take place). At most, defendant Holmberg's instruction to "just do it," represents a mere scintilla of evidence that he ordered the catheterization, which is not enough to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Thus, to the extent plaintiff attempts to subject defendant Holmberg to civil liability under § 1983 for the forced catheterization, plaintiff's claims must be dismissed.[4]

### B. *Federal Claims Arising Out of Torn Pants*

■ Plaintiff alleges that by ignoring plaintiff Is request for new clothes after his pants were torn, defendant Holmberg essentially forced plaintiff to spend six humiliating hours in a holding cell with his penis exposed in front of other detainees. Plaintiff alleges that by these actions, defendant Holmberg violated plaintiff's constitutional rights to privacy. This right is derived primarily from the Fourth Amendment's protections against unreasonable searches and seizures and the Fourteenth Amendment's protections for substantive and procedural due process. This Court will not reach the issues of whether plaintiff has brought forth enough evidence to defeat a motion for summary judgment regarding whether defendant Holmberg was either aware of plaintiff's torn clothes, whether it was defendant Holmberg's responsibility to provide plaintiff with alternate apparel, or whether the tear in plaintiff's clothes could have possibly forced him to expose his penis to the other detainees for six consecutive hours. Rather, this Court holds that even after accepting plaintiff's conclusory assertions of fact as true, defendant Holmberg is entitled to qualified immunity for plaintiff's § 1983 claims arising out of the torn pants.

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Sixth Circuit has stated that an official is subject to suit only if "the particular conduct of the official [falls] clearly within the area protected by the constitutional [or statutory] right, such that a reasonable offi-

---

4. Plaintiff's reliance on *Clark v. Upchurch,* 955 F.2d 44, 1992 WL 27010 (6th Cir.1992) is misplaced. In *Clark,* the question of whether the two defendant nurses were responsible for having caused plaintiff Connie Clark's injuries (and constitutional deprivations) was not at issue.

cial would have known that his or her conduct violated the constitutional right." *Walton v. Southfield,* 995 F.2d 1331, 1336 (6th Cir.1993).

Without citing any authority, plaintiff makes the conclusory assertion that "[t]here is again no dispute that [plaintiff's] privacy rights are clearly established." (Plaintiff's Response Brief, # 42, at 25.) This Court does not agree. In recognizing a limited right to privacy over a spirited dissent, the Sixth Circuit noted that up to that point "[n]either the Supreme Court nor the Sixth Circuit has ever expressly recognized that the fourth amendment 'right to privacy' encompasses the right to shield one's naked body from view by members of the opposite sex." *Kent v. Johnson,* 821 F.2d 1220, 1226 (1987).[5] In joining those circuits which recognize such a constitutional right, the Sixth Circuit did not detail the constitutional origins of such a right, but theorized as follows:

> there must be a fundamental constitutional right to be free from forced exposure of one's person to *strangers of the opposite sex* when not reasonably necessary for some legitimate, overriding reason, for the obverse would be repugnant to notions of human decency and personal integrity. Of course, as with all observations of law that are grounded on some "universal" or "moral" truth, this premise is subject to debate by reasonable minds.

*Id.* (emphasis added) (citation omitted). While the Sixth circuit found that its sense of privacy was offended by the notion of forced exposure of one's person to strangers of the opposite sex, given its difficulty in reaching this conclusion, it is by no means clear to this Court that the Sixth Circuit's sense of propriety would be offended by a detainee's forced exposure to members of the same sex. If this Court is unable to determine that defendant Holmberg's alleged conduct constituted a violation of plaintiff's constitutional rights of privacy, it would be unreasonable to expect defendant Holmberg to have appreciated the constitutional dimensions of his acts. Thus, defendant Holmberg is entitled to qualified immunity insofar as his actions are alleged to have caused the violation of plaintiff's privacy rights.

## II. Butterworth Hospital and Dr. McNinch

 Plaintiff alleges that Butterworth and Dr. McNinch also acted in violation of 42 U.S.C. § 1983 and Michigan's common law with respect to the catheterization. An "under the color of state law" determination is coterminous with a "state action" determination. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982); *Moore v. Paducah,* 890 F.2d 831, 833 (6th Cir.1989). "The deprivation must be caused by ... a person for whom the State is responsible." *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754; *Moore,* 890 F.2d at 833. Normally, this determination is made as a matter of law. *See, e.g., Moore,* 890 F.2d at 833; *Johnson v. Orr,* 780 F.2d 386, 390 (3d Cir. 1986), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986).

Although neither defendant is a state agency or a state employee, plaintiff claims that defendants Butterworth and McNinch were acting under the color of state law because they were acting as the agents of defendant Holmberg in following Holmberg's order to catheterize plaintiff. As a result, plaintiff claims that defendants should be held liable for acting under the color of state law under either the "state compulsion test" or the "nexus test." Both tests are methods of determining whether private conduct is attributable to the state. *See Ellison v. Garbarino,* 48 F.3d at 195.

 This Court holds that defendants Butterworth Hospital and Dr. McNinch were not state actors and were therefore not acting under color of state law in catheterizing plaintiff. Under the state compulsion test, a plaintiff must prove "that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Ellison,* 48 F.3d at 195. Dr. McNinch testified that he ordered a urine sample for medical reasons based upon his own judgment. (McNinch Dep. at 28.) Dr. McNinch also testified that the idea of the catheter was brought to him by Nurse Hoefflinger, not defendant Holmberg. (McNinch Dep. at 41.) The uncontroverted

---

5. In fact, the Supreme Court has yet to recognize such a right.

evidence indicates that defendant Holmberg simply assisted in the catheterization after it had already been ordered by Dr. McNinch. As noted by defendants, the Supreme Court has held that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives . . . ." *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982).

Under the nexus test, plaintiff must establish "a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state." *Ellison,* 48 F.3d at 195. Simply performing a medical clearance so that a detainee may be admitted to jail will not suffice under this standard. As noted by defendants, this clearance can be obtained from any licensed medical doctor. In the instant case, defendant Holmberg only took plaintiff to Butterworth Hospital after he was unable to obtain a blood draw from the nurse at the jail or from the first medical center he visited that evening. Thus, defendants' actions can hardly be attributed to the state. As a result, defendants Butterworth Hospital and Dr. McNinch were not acting under color of state law pursuant to either the state compulsion test or the nexus test. Plaintiff's § 1983 claims against these defendants must therefore be dismissed.[6]

### III. Michigan Common Law Claims

Plaintiff alleges numerous common law claims, including medical malpractice, assault, and battery, against defendants Butterworth Hospital and Dr. McNinch. Plaintiff also alleges that defendant Holmberg's actions constituted gross negligence, assault, and battery under Michigan state law. Because plaintiff presents no actionable claims under federal law, these claims will be dismissed without prejudice.

### IV. Motion to Amend

Plaintiff has also filed a motion for leave to file a second amended complaint in order to add Nurse Hoefflinger and Mike Swartzlan-

der as defendants. The addition of these parties would not change this Court's analysis of plaintiff's federal law claims. As a result, this Court will deny the motion without prejudice.

### *Conclusion*

For all the aforesaid reasons, this Court holds that all federal claims alleged under 42 U.S.C. § 1983 against defendants Holmberg, Butterworth Hospital, and Dr. McNinch are dismissed with prejudice. The remaining claims will be dismissed without prejudice. Plaintiff's motion to amend his complaint will therefore be denied as frivolous. Plaintiff is free to file his remaining common law claims in Michigan state court. An Order consistent with this Opinion will be entered.

### ***ORDER***

In accordance with the opinion issued on this date,

**IT IS HEREBY ORDERED** that defendants Village of Sparta, Robert Smith, and Devon Holmberg's Motion for Summary Judgment (docket no. 36) is **GRANTED IN PART AND DENIED IN PART.** It is granted to the extent that plaintiff Christopher Rudy's claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.** It is denied to the extent that plaintiff's state law claims will not be dismissed on the merits.

**IT IS FURTHER ORDERED** that defendants Butterworth Hospital and Dale McNinch's Motion for Partial Summary Judgment (docket no. 48) is **GRANTED.** Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to File a Second Amended Complaint (docket no. 55) is **DENIED WITHOUT PREJUDICE.**

Pursuant to 28 U.S.C. § 1367, this Court will decline to exercise its jurisdiction over the remaining state law claims alleged against defendants Holmberg, Butterworth Hospital, and McNinch. Thus,

---

**6.** Once again, plaintiff's reliance on *Clark v. Upchurch,* 955 F.2d 44, 1992 WL 27010 is misplaced. In *Clark,* the two defendant nurses worked at a municipal hospital and the question of whether they were acting under color of state law was not at issue.

IT IS FURTHER ORDERED that Christopher and Alice Rudy's remaining state law claims are **DISMISSED WITHOUT PREJUDICE.** Plaintiffs are free to file these state law claims in Michigan state court.

This case is **DISMISSED** in its entirety.