Rick R. ELLISON, Plaintiff–Appellant,

v.

A.J. GARBARINO, M.D.; William M. HOGAN, M.D.; Stewart BRAMSON, M.D.; Bruce GREEN, M.D.; Peninsula Psychiatric Center, Inc., Defendants–Appellees.

No. 94–5015.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 24, 1995.

Decided Feb. 24, 1995.

Thomas M. Leveille (briefed), Ramsey & Leveille, Knoxville, TN, for Rick R. Ellison.

M. Lacy West (briefed), Julia C. West, West & Rose, Kingsport, TN, for A.J. Garbarino, M.D.

James G. O'Kane, Jr. (briefed), Baker, McReynolds, Byrne, Brackett, O'Kane & Shea, Knoxville, TN, for William M. Hogan, M.D., Bruce Q. Green, M.D.

E. Blake Moore (briefed), Spears, Moore, Rebman & Williams, Chattanooga, TN, for Stewart Bramson, M.D.

Foster D. Arnett (briefed), Thomas M. Cole (briefed), Arnett, Draper & Hagood, Knoxville, TN, for Peninsula Psychiatric Center, Inc.

Before: RYAN and SILER, Circuit Judges; and MILES, District Judge.*

SILER, J., delivered the opinion of the court, in which RYAN, J., joined. MILES, D. J. (pp. 197–98), delivered a separate opinion concurring in part and concurring in the judgment.

SILER, Circuit Judge.

Plaintiff Rick Ellison challenges the district court's grant of summary judgment in favor of Defendants A.J. Garbarino, William Hogan, Stewart Bramson, Bruce Green and Peninsula Psychiatric Center, Inc. after finding that none of the defendants was a state actor for purposes of 42 U.S.C. § 1983. The claim arose from a civil commitment of plaintiff to the mental hospital. None of the defendants is a state employee or agency.

For the reasons stated herein, we affirm the decision of the district court.

## I.

Debbie Ellison, the wife of Plaintiff Rick Ellison, believed that her husband was suffering from psychological problems and would become violent. Fearing for her safety, Ms. Ellison obtained an order of transport from the General Sessions Court of Cocke County, Tennessee, which authorized deputies of the Cocke County Sheriff to transport Mr. Ellison to the office of Defendant Dr. Garbarino for psychological evaluation. Dr. Garbarino determined that plaintiff needed medical attention and signed a Certification of Need for Emergency Admission pursuant to § 33–6–103 of the Tennessee Code. The deputies then transported plaintiff to Peninsula Hospital, a hospital privately owned and operated by Defendant Peninsula Psychiatric Center, Inc. Upon plaintiff's arrival, Defendant Dr. Stewart Bramson, a private physician employed by the hospital, evaluated plaintiff and determined that plaintiff was indeed mentally ill and posed an immediate likelihood of serious harm to his wife and/or his children.[1] Dr. Bramson executed a second Certification of Need for

Emergency Admission, which is necessary under Tennessee law to privately commit an individual involuntarily.

On January 6, 1992, the General Sessions Court for Blount County, Tennessee ordered the detention of plaintiff for emergency diagnosis, evaluation and treatment and a probable cause hearing. Plaintiff remained in the hospital until January 10, 1992, when the General Sessions Court determined, based upon the certificates of a psychologist and a physician, that plaintiff was not in need of further emergency care and treatment.

Plaintiff sued the defendants pursuant to 42 U.S.C. § 1983. After determining that none of the defendants was a "state actor" for purposes of § 1983, the district court granted summary judgment in favor of defendants.

## II.

This court reviews a district court's grant of summary judgment de novo. *Wolotsky v. Huhn,* 960 F.2d 1331, 1334 (6th Cir. 1992). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In making this determination, this court will view the evidence in the light most favorable to the non-moving party. *Wolotsky,* 960 F.2d at 1334.

A § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Simescu v. Emmet County Dept. of Social Servs.,* 942 F.2d 372, 374 (6th Cir.1991) (citing *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)). The parties do not contest that this case

---

* The Honorable Wendell A. Miles, United States District Judge for Western District of Michigan, sitting by designation.

1. According to the doctors' records, plaintiff had been brandishing a gun under the delusion that intruders were in his home.

implicates a constitutional right to liberty. The parties do dispute, however, whether the plaintiff can establish that defendants acted under color of state law. Specifically, the parties dispute whether defendants are "state actors," that is, whether their actions are "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982).

This circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. *Wolotsky*, 960 F.2d at 1335. The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state...." *Id.* The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. *Id.* Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state. *Id.* Plaintiff's primary contention is that defendants performed a public function when they committed plaintiff to the psychiatric institution pursuant to Tennessee state statutes.

A private individual in Tennessee may admit a person involuntarily, pursuant to an officer's or licensed physician's direction, if the individual and the physician or officer find, in part, that the patient is mentally ill and poses an immediate substantial threat of serious harm to himself or others. Tenn.Code Ann. § 33–6–103(a) & (b). Section 33–6–104 defines serious harm, in part, as threatening suicide or homicide. Judicial action is not necessary in order to obtain the initial certification for emergency psychiatric care. *Id.* § 33–6–104. Plaintiff relies almost exclusively on these provisions as proof that the defendants were state actors.

The issue of whether a private physician's decision to admit a patient pursuant to a state involuntary commitment statute implicates state action is one of first impression

for this circuit. For this reason, we look to the case law of our sister circuits, as well as analogous case law of this circuit, for guidance on this issue.

Turning first to the decisions of our sister circuits, a majority of courts hold that involuntary commitment by private physicians pursuant to a state statute does not result in state action. For instance, in *Rockwell v. Cape Cod Hospital*, 26 F.3d 254 (1st Cir. 1994), two private physicians admitted Rockwell pursuant to a Massachusetts statute for emergency psychiatric care. Rockwell sued the doctors and the hospital under § 1983 and the district court dismissed the suit for lack of state action on the part of the defendants. *Id.* at 255–56. The court of appeals affirmed the lower court's decision after determining that none of the three state action tests applied. First, the Massachusetts statute did not compel or encourage involuntary commitment. It only provided a mechanism for making a private commitment when necessary. *Id.* at 258. Next, while the hospital was subject to limited state regulation, there did not exist a close enough nexus between the hospital and the state. *Id.* Finally, in regard to plaintiff's claim that the defendants were performing a public function, as involuntary commitment in Massachusetts historically was not the "exclusive prerogative of the State," the third test was not satisfied. *Id.* at 260.

The Seventh and Eleventh Circuits have reached similar conclusions. In *Harvey v. Harvey*, 949 F.2d 1127 (11th Cir.1992), a case relied upon by the district court, the court held that private physicians and a hospital were not state actors when they admitted a patient pursuant to a Georgia involuntary commitment statute. Like the court in *Rockwell*, the *Harvey* court discussed each test in detail and determined that none was implicated. *Id.* at 1131. In *Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), the Seventh Circuit determined that private physicians acting pursuant to an Illinois involuntary commitment statute were not state actors for purposes of § 1983. Before so ruling, the court offered an exhaustive discussion of the history of involuntary

commitment in both Illinois and the United States in general and concluded that as involuntary commitment had never been exclusively the prerogative of the state of Illinois, the public function test was not implicated. *Id.* at 1381.

The approach taken in the aforementioned cases is consistent with this circuit's general approach to color of state law questions. For example, we held in *Wolotsky v. Huhn,* 960 F.2d 1331 (6th Cir.1992), that a private corporation that provides social services to citizens in Ohio, deriving 75 percent of its funding from the county, was not a state actor under § 1983. *Id.* at 1337; *see also Simescu v. Emmet County Dept. of Social Servs.,* 942 F.2d 372 (6th Cir.1991).

▆▆▆▆ In light of the above, we find that plaintiff failed to meet his burden in regard to the three state action tests. First, the Tennessee statute does not compel or encourage private individuals to pursue involuntary commitment. Rather, the statute completely leaves this to the private individual's discretion. *See Janicsko v. Pellman,* 774 F.Supp. 331, 338–39 (M.D. Pa.1991) (finding significant that physicians retained the discretion under Pennsylvania statute to determine when commitment is necessary), *aff'd without op.,* 970 F.2d 899 (3d Cir.1992). For example, § 33–6–103 states that the "person *may be detained.*" Tenn.Code Ann. § 33–6–103 (emphasis added). As to the second test, as plaintiff makes no attempt to establish a sufficient "nexus" between defendants, this test in inapplicable.

Finally, plaintiff has not established that involuntary private commitment in Tennessee is a public function. Courts that have addressed this issue have typically required

some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state. *See, e.g., Rockwell,* 26 F.3d at 259 (history of involuntary commitment by private citizens in Massachusetts); *Spencer,* 864 F.2d at 1380–81 (historical background for involuntary commitment in Illinois). This analysis is, for the most part, state specific. Plaintiff, however, neglected to offer any analysis concerning the history of involuntary commitment in Tennessee. Considering that plaintiff bears the burden on this issue, this failure alone renders this test inapplicable.[2]

Plaintiff contends that *Burch v. Apalachee Community Mental Health Servs., Inc.,* 840 F.2d 797 (11th Cir.1988), *aff'd sub nom, Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), require a different result.[3] Plaintiff's reliance on these cases, however, is misplaced. In *Burch,* the Eleventh Circuit stated as dicta that a private hospital and its doctors were state actors under § 1983 when they involuntarily committed Burch to Apalachee Community Health Services, Inc. When the Eleventh Circuit decided *Harvey* four years later, however, it determined that a private hospital and private physicians were not state actors when they admitted a patient pursuant to an involuntary commitment statute. *Harvey,* 949 F.2d at 1133. In so holding, the court noted that the *Burch* court's discussion pertaining to state action had no precedential value since the defendants in *Burch* never disputed their status as state actors—the issue was moot at the time the *Burch* court discussed it.

2. It appears that even if historical analysis was available, it would indicate that private involuntary commitment has not been exclusively the prerogative of the State of Tennessee. For instance, both the *Rockwell* and *Spencer* courts indicated that, in general, a private citizen's right to commit a person involuntarily for emergency treatment existed coextensively with that of the various states. *Rockwell,* 26 F.3d at 259–60; *Spencer,* 864 F.2d at 1380–81. We are therefore confident that in Tennessee, as in Massachusetts, Illinois or Georgia, private citizens have traditionally held the power to commit an individual involuntarily in emergency situations.

3. Plaintiff also relied on *Davenport v. Saint Mary Hospital,* 633 F.Supp. 1228 (E.D. Pa.1986), as supporting his position. This case has not been good law since 1992, however, when the Third Circuit affirmed, without opinion, a district court opinion that treated *Davenport's* discussion as dicta and held the opposite way. *Janicsko v. Pellman,* 774 F.Supp. 331, 336 n. 5 (M.D. Pa.1991), *aff'd without op.,* 970 F.2d 899 (3d Cir.1992).

In *West*, the Supreme Court held that a physician under contract with the state to care for prison inmates was a state actor under § 1983. *West*, 487 U.S. at 57, 108 S.Ct. at 2260. For obvious reasons, the *West* case does not govern the instant case. The present defendants are in no way contractually bound to the state. Indeed, they are private physicians and a private hospital.

As an alternative ground for state action, plaintiff contends that defendants were acting in concert with officials of the state when police officers transported plaintiff to the hospital. We find this argument to be unpersuasive for a number of reasons. First, the officers became involved only on Mrs. Ellison's initiative. Second, if plaintiff is making a conspiracy claim, he must do more than offer two sentences on the last page of his brief. Finally, as the Seventh Circuit noted in *Spencer*, "police assistance in the lawful exercise of self-help does not create a conspiracy with the private person exercising that self-help." *Spencer*, 864 F.2d at 1381.

Finally, Peninsula Hospital argued as an alternative basis for summary judgment that it cannot be held liable vicariously under § 1983 for the acts of its employees. Considering this court's determination of the prior issues, however, we find it unnecessary to decide this issue.

**AFFIRMED.**

MILES, District Judge, concurring in part and concurring in the judgment.

I write separately because I do not share the view that defendant Peninsula Psychiatric Center, Inc., which owned and operated the mental hospital where plaintiff Ellison was detained, is not a "state actor" for purposes of 42 U.S.C. § 1983.

Although I agree that the actions of the physician defendants do not satisfy any of the traditional tests for determining the existence of state action, I cannot reach the same conclusion with regard to Peninsula. As noted in Judge Siler's opinion, after Doctors Garbarino and Bramson executed Certificates of Need for Emergency Admission, the General Sessions Court for Blount County,

Tennessee ordered that Ellison be detained on an emergency basis. Ellison was then detained at Peninsula until January 10, 1992, when a Blount County judge dismissed the proceedings against Ellison based on two more certificates, one signed by a licensed psychologist and another signed by defendant Dr. Bruce Green, which concluded that Ellison should not be held for additional care and treatment.

Based upon a state court order, Ellison was detained at Peninsula. Acts performed by private parties under compulsion of state law violate the Fourteenth Amendment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–71, 90 S.Ct. 1598, 1615–16, 26 L.Ed.2d 142 (1970). "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992) (citations omitted). Although state coercion has been found lacking in the voluntary commitment context, *see Lewis v. Law–Yone*, 813 F.Supp. 1247, 1255 (N.D.Tex.1993), it can be present in the involuntary commitment situation. *See Spencer v. Lee*, 864 F.2d 1376, 1378 (7th Cir.1989) ("If the State of Illinois ordered or encouraged private persons to commit the mentally ill, they would indeed be state actors").

In this case, Ellison is not complaining of the treatment which he received during his confinement, the terms of which were apparently not ordered by the state.[1] *Cf. Jarrell v. Chemical Dependency Unit of Acadiana*, 791 F.2d 373, 374 (5th Cir.1986) (no state action shown where plaintiff, involuntarily committed to chemical dependency unit, complained of constitutional deprivations during treatment). Instead, he is complaining simply that he was wrongly confined at Peninsula without due process. Someone at the hospital caused Ellison to be detained, and they are alleged to have acted pursuant to a state court order. *See Spencer*, 864 F.2d at 1384–85 (Ripple, J., joined by Flaum, J., dissenting) (Illinois private health care institution holds involuntarily committed patient

---

1. Ellison does not, for instance, claim that he

was abused during his stay at Peninsula.

"by direction of the state's judicial process" and state has, in effect, "delegated the task of enforcing state-ordered commitment to a private facility"). Under the circumstances, while I hesitate to comment upon whether Ellison has sufficiently alleged a Due Process violation given his apparent failure to challenge the Tennessee statute under which he was detained, I would conclude that state action has been sufficiently alleged as to Peninsula's conduct.

Although I disagree with my colleagues' conclusion that the hospital in this case was not a state actor, I agree that the district court's decision as to the hospital should be affirmed. Peninsula argued as an alternative basis for summary judgment that it could not be held vicariously liable under § 1983 for the acts of its employees. *See Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). The district court adopted this position as additional support for its decision. On appeal, Ellison has not challenged the district court's resolution of this issue.[2] Given Ellison's failure to do so, I concur in the judgment as to Peninsula.

---

2. In his only brief filed on appeal, Ellison states the sole issue presented for review as

Whether a private hospital and private physicians act under color of state law pursuant to 42 U.S.C. § 1983 when they involuntarily commit an individual to a private hospital or hold

an individual against his will in such private hospital such that the hospital and physicians are subject to federal court jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Appellant's Brief at p. vii.