103 F.3d 137
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joette Baross CARLSON, Plaintiff-Appellant,
v.
SAN MATEO COUNTY, Leonard Cardoza, John Wells, Donald
O'Keefe, Ken Jones, Norman Solari, Sequoia Hospital
District, Gary Farnham, M.D., Gerald Bausek, M.D., David
Jacoby, M.D., and Does 1 through 25, Defendants-Appellees.
 No. 95-17426.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 6, 1996.*
Decided Dec. 09, 1996.
 
 Before: CHOY, REAVLEY** and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Joette Carlson sued San Mateo County, certain county officials and three defendants the parties refer to as the "Hospital Defendants," alleging causes of action under 42 U.S.C. § 1983 and state law. The Hospital Defendants are the Sequoia Hospital District, Dr. Gerald Bausek and Dr. Gary Farnham. Carlson appeals summary judgments entered in favor of the Hospital Defendants, which were entered as final judgments under FED.R.CIV.P. 54(b). We affirm.
 
 BACKGROUND
 
 3
 At the time of the events in issue, Carlson was a sergeant with the county sheriff's department. The sheriff, defendant Leonard Cardoza, instructed a captain, defendant John Wells, to take Carlson to a hospital for psychiatric evaluation. According to defendants, the source of concern was that Carlson was acting in a bizarre manner, claiming that people were following her and wanted to "eat" her. Carlson maintains that "eat" is just police jargon for assault. She also claimed that people had planted bugs and video cameras in her home, which was in the final stages of construction. She stated her intent to shoot anyone who tried to harm her or her family.
 
 
 4
 On October 2, 1992 Carlson was taken to Sequoia Hospital by Wells and two other officers, under the ruse they were going to pick up sleeping pills. She claims that the officers would not let her leave. Appellee Farnham, the attending emergency physician, diagnosed her as having an acute paranoid psychotic episode, caused either by primary psychosis or methamphetamine abuse. Wells filled out a "5150" form under § 5150 of the California Welfare and Institutions Code, which authorizes a peace officer or attending staff of a designated facility to place an individual in a mental health facility if the officer or staffer has probable cause to believe that the individual, "as a result of a mental disorder, is a danger to others, or to himself or herself, or gravely disabled." The statute authorizes a 72-hour treatment and evaluation.
 
 
 5
 Appellee Bausek, a psychiatrist, was on call at the time and was called in to consult. He admitted Carlson into the hospital for a 72-hour involuntary treatment and evaluation based on the information given him by Wells in the form and the personal observations of a nurse. Among Bausek's concerns was that Carlson had been carrying guns that afternoon.
 
 
 6
 The next day, Carlson told Bausek that there was a conspiracy against her somehow connected to the construction work on her house. She again stated that she would shoot those people who were harassing her. She took medication orally once or twice and thereafter refused. She claims she was forced to take powerful drugs by injection as a condition to seeing her husband and was rendered unconscious, and that a blood sample was taken while she was unconscious. Appellees dispute that she was forced to take medication or that blood was drawn without her consent.
 
 
 7
 Carlson sued the Hospital Defendants for violation of her constitutional rights under § 1983. She also alleged a conspiracy by all the defendants to deprive her of her constitutional rights, and asserted state law claims for false imprisonment and negligence against the Hospital Defendants.
 
 DISCUSSION
 A. Section 1983 Claims
 
 8
 The parties dispute who actually effected the involuntary commitment under § 5150. Officer Wells, not a party to this appeal, filled out the form. The district court found that "Wells is the one who initiated the procedure and actually committed plaintiff pursuant to section 5150."
 
 
 9
 Regardless, the doctors Bausek and Farnham are not employees of the state, but are private physicians who are independent contractors with the hospital. Summary judgment was properly granted in favor of these appellees because they did not act under color of state law, an essential element of a claim under § 1983.[1] We agree with four other circuits who have addressed whether involuntary commitments by private physicians pursuant to a state statute amount to state action. All hold that state action is not present.[2] Carlson urges that state action is present here under the "public function" test. Under this test the performance of a function by a private actor can amount to state action if the function traditionally is the exclusive prerogative of the state.[3] The other circuits all rejected this argument.[4] We find nothing unique about the California statutory scheme or the facts of this case that compels a result different from that reached by the other circuits. And as the Sixth Circuit notes, the burden is on the plaintiff to offer an historical analysis demonstrating that the function in issue is traditionally one that is the exclusive prerogative of the state.[5] Carlson offered no such analysis.
 
 
 10
 As to the hospital district, even if it is a state actor, there was no evidence presented of a policy or custom required to hold it liable for the acts of its agents or employees under § 1983.[6]
 
 
 11
 Carlson argues in the alternative that the Hospital Defendants are liable for conspiring to deprive her of her constitutional rights. While a defendant may act under color of state law by conspiring with a state official,[7] there was no evidence offered to support a meeting of the minds on the part of the Hospital Defendants and the County Defendants (the sheriff et al.) to violate Carlson's constitutional rights. Bausek and Farnham did not even know the County Defendants before the date of the incident.
 
 B. State Law Claims
 
 12
 Carlson asserted state law claims for false imprisonment and negligence. Insofar as these claims relate to the commitment itself, California by statute limits liability for a § 5150 commitment. California Welfare and Institutions Code § 5278 provides that "[i]ndividuals authorized to detain a person for treatment and evaluation" under § 5150 "shall not be held either criminally or civilly liable for exercising this authority in accordance with law." Section 5291.1 of the Code provides that "[a]ny individual who is knowingly and willfully responsible for detaining a person in violation of the provisions of this article is liable to that person in civil damages." We agree with the district court that, construing these provisions in pari materia, California does not recognize negligence liability for a § 5150 commitment. Instead tort liability in this context is limited to knowing and willful violations of the law.
 
 
 13
 Carlson's summary judgment evidence raised no colorable claim that the Hospital Defendants intentionally violated the law. For example, there was no evidence that Wells deliberately included false information on the 5150 form to establish probable cause, and that Bausek was aware of such falsehoods when he admitted Carlson. And as to the hospital, even though it is not an "individual" under §§ 5278 and 5291.1, there was no summary judgment evidence of intentional tortious conduct on the part of the hospital's agents or employees which can serve as a basis for imposing vicarious liability on the hospital. Hence, summary judgment on the state law claims was properly granted insofar as the claims related to the incarceration itself.
 
 
 14
 Carlson claims that she was forced to take medication against her will, had blood drawn without her consent while she was unconscious, and that such acts are actionable under a state law negligence cause of action. We conclude that summary judgment was properly granted on these claims.
 
 
 15
 As to the alleged taking of blood while Carlson was unconscious, we do not believe that such an intentional act with intended consequences falls within the ambit of a negligence cause of action, as opposed to some unidentified intentional tort Carlson did not plead.[8] In Cobbs v. Grant,[9] the California Supreme Court held that performing a medical procedure (in that case an operation) without the consent of the patient is a battery, assuming the patient is competent to give consent.[10] It went on to hold that when a physician obtains consent but fails to use due care in disclosing the risks of the procedure to the patient, the patient has a cause of action for negligence.[11] However, the court made clear that there is no duty to disclose "the relatively minor risks inherent in common procedures," and gave the taking of a blood sample as an example of a procedure where there is no duty to disclose risks to the patient that can underlie a negligence claim.[12]
 
 
 16
 Further, Carlson offered no expert testimony that this alleged conduct fell below the standard of due care, a showing necessary to support a finding of negligence. "The standard of care, which is the basic issue in [medical] malpractice actions, can be proven only by expert testimony."[13] She claims that the taking of blood without the patient's permission is negligence per se. Carlson cites no authority, nor can we locate any, in support of this proposition. On the contrary, we read Cobbs to hold that the taking of a blood sample might constitute battery, which Carlson never pleaded, but can never constitute negligence, much less negligence per se.
 
 
 17
 As to Carlson's claim that she was administered medication against her will, Carlson testified in her deposition that she was never forced to take medication. She testified that she took potassium twice and refused medication thereafter. However, both Carlson and her husband testified that a nurse would not allow Carlson to see her husband until she was injected with two syringes. We again fail to see how such deliberate actions with intended consequences could constitute negligence, and Carlson again fails to offer expert testimony that, under the circumstances presented here, the conduct fell below the standard of due care.
 
 C. Rule 54(b) Certification
 
 18
 Carlson separately complains that the district court erred in entering a final judgment in favor of the Hospital Defendants under FED.R.CIV.P. 54(b). Use of this rule to enter final judgment is reviewed for abuse of discretion.[14] There was no abuse of discretion. This case is now over three years old. Under Rule 54(b) the court properly determined that there was "no just reason for delay" in resolving the factual and legal issues pertinent to the Hospital Defendants, and entering final judgment in their favor.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 West v. Atkins, 487 U.S. 42, 48 (1988)
 
 
 [2]
 Ellison v. Garbarino, 48 F.3d 192 (6th Cir.1995); Rockwell v. Cape Cod Hospital, 26 F.3d 254 (1st Cir.1994); Harvey v. Harvey, 949 F.2d 1127 (11th Cir.1992); Spencer v. Lee, 864 F.2d 1376 (7th Cir.1989), cert. denied, 494 U.S. 1016 (1990)
 
 
 [3]
 Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1487 (9th Cir.1995)
 
 
 [4]
 Ellison, 48 F.3d at 196; Rockwell, 26 F.3d at 258-260; Harvey, 949 F.2d at 1141-42; Spencer, 864 F.2d at 1379-81
 
 
 [5]
 Ellison, 48 F.3d at 196
 
 
 [6]
 Monell v. Dep't of Social Servs., 436 U.S. 658, 690-96 (1978)
 
 
 [7]
 See, e.g., Price v. State of Hawaii, 939 F.2d 702, 708 (9th Cir.1991), cert. denied, 503 U.S. 938 (1992)
 
 
 [8]
 See Willard v. Caterpillar, Inc., 48 Cal.Rptr.2d 607, 620-21 (Cal.App.1995) (quoting RESTATEMENT (SECOND) OF TORTS § 870 cmts. a, b (1977) ("[N]egligence liability [involves] conduct producing unreasonable risk of harm to others.... An intentional tort is one in which the actor intends to produce the harm that ensues.... He intends to produce the harm when he desires to bring about that consequence by performing the act.")
 
 
 [9]
 502 P.2d 1 (Cal.1972)
 
 
 [10]
 Id. at 8, 10
 
 
 [11]
 Id
 
 
 [12]
 Id. at 11 & n. 2
 
 
 [13]
 Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir.1988) (applying California law)
 
 
 [14]
 Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 797 (9th Cir.1991)