**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0336n.06
Filed: April 29, 2005

No. 04-1130

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

AUDREY POLK,                                                     )
                                                                )
      **Plaintiff-Appellant,**                               )
                                                                )   **ON APPEAL** FROM THE
v.                                                              )   UNITED STATES DISTRICT
                                                                )   COURT FOR THE EASTERN
SHAWN HOPKINS,                                                  )   DISTRICT OF MICHIGAN
                                                                )
      **Defendant-Appellee;**                               )
                                                                )   **O P I N I O N**
CITY OF ROSEVILLE,                                             )
                                                                )
      **Defendant.**                                        )
_____)

Before:  **KENNEDY, MOORE, and SUTTON, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  This is a § 1983 claim arising out of events

following a traffic stop on November 23, 2000.  Plaintiff-Appellant Audrey Polk ("Polk") asserts

that Defendant-Appellee Shawn Hopkins ("Hopkins") violated her rights, under the Fourth and

Fourteenth Amendments of the United States Constitution, not to be wrongfully arrested or

subjected to excessive force.  The district court granted summary judgment to Hopkins on the basis

of qualified immunity.[1]  We **AFFIRM** the judgment of the district court insofar as it holds that

---

[1]The district court granted summary judgment to Defendant City of Roseville ("the City")
on the basis of Polk's failure to show that any of the alleged constitutional violations resulted from
a City policy or custom.  The district court declined to exercise supplemental jurisdiction over Polk's
state-law claims, and remanded these claims to the Michigan courts.  Record ("R.") 5.  Polk does
not appeal the grant of summary judgment in favor of the City on all claims, or the grant of summary

Hopkins is entitled to summary judgment on the wrongful-arrest claim, **REVERSE** the judgment of the district court insofar as it holds that Hopkins is entitled to summary judgment on the excessive-force claim, and **REMAND** the case to the district court for further proceedings.

## I.  BACKGROUND

We take the facts of this case in the light most favorable to Polk, the party opposing the summary judgment motion.  The morning of November 23, 2000, Polk received a phone call from her sister, Arlene Edmonds ("Edmonds").  Edmonds told Polk that she believed "there was something wrong" with their mother, but that she "wasn't sure what the problem was."  Joint Appendix ("J.A.") at 99 (Polk Dep.).  Believing that it was a medical emergency, Polk agreed to drive to Edmonds's house, pick up Edmonds, and then drive Edmonds to their mother's house as soon as possible.

Polk exceeded the speed limit on the way to Edmonds's house.  Using his radar, Hopkins clocked Polk driving seventy-six miles per hour in a forty-five-miles-per-hour zone.  At this time, Hopkins was traveling on the southbound side of a divided road, while Polk was traveling north, and Hopkins was 500 to 700 feet from Polk's car.  Activating the lights of his semi-marked police cruiser, Hopkins crossed the median and began pursuing Polk, but Hopkins never came closer than "within 100 yards" of Polk's car.  J.A. at 164 (State Ct. Trial Tr.).  Hopkins observed that Polk either slowed down or came to a complete stop (Hopkins was too far away to tell which it was) when she came to a stop sign, but later witnessed Polk exceeding sixty miles per hour in a twenty-five-miles-per-hour zone.  However, Polk was not driving in an erratic manner, and Hopkins did not observe any people in the neighborhood or any other vehicular traffic on the road.

judgment in favor of Hopkins on Polk's malicious-prosecution claim.

2

Polk did not see Hopkins while she was driving. When Polk arrived at Edmonds's house, she exited the car and began to move toward the house to let Edmonds know she had arrived. It was not until after Polk was out of the car that she saw Hopkins's semi-marked police vehicle. She then turned around and began to walk toward the police car until Hopkins exited the car with his gun drawn. Polk stopped, and Hopkins began yelling at her and telling her to get down on the ground. At this time, several events occurred: Polk attempted to explain that she was dealing with a family medical emergency, Edmonds came out of the house and began asking Hopkins "what was wrong with him," J.A. at 191 (Edmonds Dep.), and Edmonds's neighbor Mario Sorisi, an acquaintance of Hopkins, came out of the house and had some type of verbal exchange with Hopkins. Polk did not get on the ground immediately, but held her hands up "in a position showing that, you know, [she is] adhering to, or trying to adhere to, what [Hopkins] is asking [her] to do." J.A. at 103 (Polk Dep.). Edmonds told Polk not to get down on the "wet and frosty" grass, so she turned and walked slowly away from Hopkins while "looking for a place to get down on the ground." J.A. at 105 (Polk Dep.). Polk "dropped down to [her] knees" and "was still in the process of trying to get down when [she] was pushed down to the ground, [she] believe[s] by Officer Hopkins." J.A. at 105 (Polk Dep.).

Polk explained that she was "pushed down, or kicked down, or I'm not sure what" by "something that was large, hand possibly, foot, I'm not sure . . . [a] knee maybe." J.A. at 106 (Polk Dep.). She fell forward, but did not suffer any visible injuries from this initial fall. However, after she was down, "Hopkins t[ook her] right hand and pull[ed] it behind [her] back, jerk[ed] it behind [her] back." J.A. at 107 (Polk Dep.). Hopkins then "stood on top of" Polk, apparently with his foot "on the upper part of [her] back." J.A. at 107 (Polk Dep.). He then grabbed Polk's other hand, handcuffed her, and told her to get up. Polk attempted to stand up on her own, but before she could

3

finish, Hopkins "jerked [her] up by the handcuffs . . . actually pulled [her] up to [her] feet." J.A. at 107 (Polk Dep.). Polk initially had trouble getting into the car "because [Hopkins's] coat was on the floor" but Hopkins "just kind of pushed" her into the car. J.A. at 108 (Polk Dep.). Polk believes that these actions were done with enough force to cause her severe and possibly permanent injury to her "back, shoulder, and leg." J.A. at 82 (Polk Dep.).

Once Polk was in the police car, Hopkins checked Polk's license and registration and called 911 to send an emergency team to Polk's mother's house. He then "pull[ed Polk] out of the car," issued her a ticket for reckless driving, and "began pushing [her] toward [her] sister's car." J.A. at 109. Polk and Edmonds then left for their mother's house, where they discovered that the problem was backed-up plumbing rather than a medical emergency. Polk was eventually tried on the reckless driving charge, but was acquitted as a matter of law by the trial judge. *See People v. Polk*, No. 2001-1266 AR (Macomb County Cir. Ct. Oct. 10, 2001) (discussing decision by trial judge). The trial judge's decision was upheld on appeal. *Id.*

Prior to this incident, Polk was employed as an "interior designer sales consultant." J.A. at 82 (Polk Dep.). She continued to work from the date of the injury until February 2001, when she went on disability leave. She returned to work briefly in September 2002, but went back on disability leave after approximately one month. She is not currently working.

## II. ANALYSIS

### A. Jurisdiction

As the district court had original jurisdiction over Polk's 42 U.S.C. § 1983 claims, *see* 28 U.S.C. § 1331, the defendants properly removed the case to federal court pursuant to 28 U.S.C. § 1441(b). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

4

**B. Standard of Review**

We conduct de novo review of decisions granting summary judgment, drawing all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To prevail, the nonmovant must simply show "sufficient evidence to create a genuine issue of material fact." *McLean*, 224 F.3d at 800. Accordingly, to survive summary judgment in a § 1983 action, Polk must demonstrate a genuine issue of material fact as to the following "two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995) (quotations omitted). In addition to surviving summary judgment on the § 1983 claim itself, Polk must also overcome Hopkins's assertion of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807-08 (1982).

In considering whether a plaintiff can overcome an officer's assertion of qualified immunity, we apply a three-factor test:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotations omitted). The order of these inquiries is not unimportant: a court must first determine whether a constitutional right was violated, then

5

whether the right was clearly established, and finally whether the official's action was objectively reasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004). We conclude that Polk has failed to establish a constitutional violation based on wrongful arrest, but has satisfied all three factors necessary to defeat Hopkins's assertion of qualified immunity on the excessive-force claim.

## C. Wrongful Arrest

In analyzing Polk's wrongful-arrest claim, we must first determine whether — and if so, at what point — an arrest occurred. In determining whether a *Terry* stop has "escalated into an arrest," *Feathers*, 319 F.3d at 851, we "consider[] factors such as the transportation of the detainee to another location, significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody, and the use of weapons or bodily force." *United States v. Lopez-Arias*, 344 F.3d 623, 627 (6th Cir. 2003) (quotation marks and citation omitted). Here, we conclude that an arrest did occur. At the very latest, Polk was arrested once Hopkins placed her, handcuffed, in his police car. *United States v. Butler*, 223 F.3d 368, 375 (6th Cir. 2000). Although placement of a handcuffed individual in a police vehicle does not in all circumstances constitute arrest, such action must be "reasonably necessary to protect the officers' safety during the investigation" or it will constitute an arrest. *Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809, 815 (6th Cir. 1999). Given the facts before us, we are unable to conclude that Hopkins's placement of Polk, handcuffed, in the police car, was reasonably necessary for investigative purposes.

In order to establish that this arrest violated the Constitution, however, Polk must prove that Hopkins lacked probable cause to arrest her. "A police officer has probable cause if there is a fair

6

probability that the individual to be arrested has either committed or intends to commit a crime."

*Feathers*, 319 F.3d at 851 (6th Cir. 2003) (quotations omitted). The determination of whether

probable cause exists in a § 1983 claim "presents a jury question, unless there is only one reasonable

determination possible." *Diamond v. Howd*, 288 F.3d 932, 937 (6th Cir. 2002).

In this case, we conclude that there is only one reasonable determination possible. Michigan

law provides that driving a vehicle "in willful or wanton disregard for the safety of persons or

property" constitutes "reckless driving." MICH. COMP. LAWS § 257.626(1).[2] Hopkins's observation

of Polk traveling seventy-six miles per hour in a forty-five-miles-per-hour zone was sufficient to

establish a "fair probability" that Polk had committed reckless driving. *Feathers*, 319 F.3d at 851

(quotations omitted); *see also Kieft v. Barr*, 214 N.W.2d 838, 839 (Mich. 1974); *People v.*

*Davenport*, 208 N.W.2d 562, 563 (Mich. Ct. App. 1973). Accordingly, we conclude that Hopkins

had probable cause to arrest Polk for reckless driving.[3] As Polk has not established that a

---

[2]As reckless driving is punishable by up to ninety-three days in prison, MICH. COMP. LAWS § 257.626(2), Hopkins could lawfully arrest Polk for reckless driving as long as he had probable cause. MICH. COMP. LAWS § 764.15(d) (authorizing warrantless arrest if "[t]he peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days . . . has been committed and reasonable cause to believe the person committed it."). We conclude that Hopkins's observation of Polk traveling seventy-six miles per hour in a forty-five-miles-per-hour zone constituted probable cause to believe that Polk was committing reckless driving. *See People v. Davenport*, 208 N.W.2d 562, 563 (Mich. Ct. App. 1973).

[3]Plaintiff's argument that collateral estoppel prevents a finding of probable cause to make a reckless driving arrest is without merit. For collateral estoppel to operate, "the precise issue raised in the [latter] case must have been raised and actually litigated in the prior proceeding." *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987). In the prior state proceeding, *People v. Polk*, No. 2001-1266 AR (Macomb County Cir. Ct. Oct. 10, 2001), the court concluded that, as a matter of law, there was insufficient evidence of "gross negligence" to allow the reckless driving charge to go to a jury. The issue of probable cause was not presented in the case, and a finding of insufficient evidence for conviction does not establish that Hopkins lacked probable cause to make the arrest. Moreover, as the arrest was lawful pursuant to § 764.15(d), we need not address whether such an insufficiency-of-the-evidence determination would have a collateral-estoppel effect

constitutional violation occurred, we must affirm the district court's grant of summary judgment to Hopkins.

## D. Excessive Force

We analyze excessive-force claims under the Fourth Amendment reasonableness standard. *Champion*, 380 F.3d at 901. In conducting this analysis, we must bear in mind that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This "'reasonableness' inquiry . . . is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. In this case, we conclude that whatever danger Hopkins may have felt during his initial confrontation with Polk, a jury question exists as to whether the force Hopkins used was reasonable. Polk has asserted in her sworn deposition that Hopkins's actions were so forceful as to prevent her from continuing in her work as an interior design sales consultant.[4] Some of the actions from which Polk claims injury took place after she was already lying flat on the ground, and some of those actions took place after Polk was handcuffed as well. Accordingly, we must conclude that there is a genuine issue of fact as to

---

on an arrest made pursuant to § 764.15(a). *See* MICH. COMP. LAWS § 764.15(a) (authorizing warrantless arrest when "[a] felony, misdemeanor, or ordinance violation is *committed* in the peace officer's presence") (emphasis added).

[4]We note that Polk sustained severe injuries in a 1996 automobile accident, including herniation of two disks in her lower back. Although such an injury could potentially have been aggravated even by a completely reasonable amount of force, this does not prevent us from concluding that there is a fact issue as to excessive force inappropriate for resolution by summary judgment.

whether the force used was reasonable. For purposes of our qualified-immunity inquiry, Polk has established a constitutional violation.

Moving to the second prong of the qualified-immunity inquiry, we must consider whether it was clearly established at the time of these events that Hopkins's actions violated the Constitution. Once Polk was flat on the ground, and especially once she was handcuffed, "there was no evidence that [Polk] presented a threat to [Hopkins] or [anyone else]." *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003). As there is "no governmental interest" in using unnecessary physical force on Polk "after [she] had been neutralized," *id*. at 301, we conclude that Polk's right not to be subjected to excessive force after being handcuffed was clearly established at the time of the events in question. *See generally McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("Everyone agrees that Mr. McDowell was handcuffed and that he was not trying to escape or to hurt anyone. The 'need for the application of force' was thus nonexistent . . . .").

Continuing to the third prong of the qualified-immunity inquiry, we must consider whether Hopkins's actions were objectively unreasonable. *Feathers*, 319 F.3d at 848. Viewing the facts in the light most favorable to Polk, we conclude that they were. At the time of some of the alleged excessive force — when Hopkins allegedly jerked Polk up by the handcuffs and pushed her into the police car — Polk had already been handcuffed, and any necessary search for weapons could easily have been conducted. After this time, any use of serious physical force — especially force substantial enough to cause disabling injury — would be objectively unreasonable. No reasonable officer could believe otherwise. *Cf. Saucier*, 533 U.S. at 205. As Polk has succeeded in establishing

9

a fact issue as to whether Hopkins used such an objectively unreasonable amount of force, Hopkins must be denied qualified immunity on Polk's excessive-force claim.[5]

### III.  CONCLUSION

We **AFFIRM** the judgment of the district court insofar as it holds that Hopkins is entitled to summary judgment on the wrongful-arrest claim, but **REVERSE** the judgment of the district court insofar as it holds that Hopkins is entitled to summary judgment on the excessive-force claim. We **REMAND** the case to the district court for further proceedings.

---

[5]We specifically address force used after Polk had been handcuffed to resolve most easily Hopkins's assertion of qualified immunity.  However, because we are denying Hopkins qualified immunity as to Polk's entire excessive-force claim, on remand Polk may of course present evidence of force used prior to the time she was handcuffed.