NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0501n.06

Case No. 17-4110

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 10, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NAQIS CROCHRAN, through his next friend, Amatullah Shields, et al., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| COLUMBUS CITY SCHOOLS, et al., | ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: SILER, COOK, and WHITE, Circuit Judges.

SILER, Circuit Judge. Naqis Crochran has autism and attention-deficit/hyperactivity disorder (ADHD). One day at school, Crochran was acting out in class, and his teacher, Courtney Plummer, tried to correct his behavior. At the suggestion of another teacher, Plummer asked Crochran if he wanted to use a body sock, which is a therapeutic tool for children with autism. Shortly after Crochran stepped into the stretchy suit, he fell down and injured his front teeth.

Crochran, by and through his mother and next friend, brought suit against Plummer, the Columbus Board of Education, and the Columbus City School District, as well as other defendants who were voluntarily dismissed. The district court granted summary judgment to the defendants on Crochran's federal claims. We AFFIRM.

Case No. 17-4110, *Naqis Crochran v. Columbus City Schools, et al.*

I.

In 2013, Crochran was a student at South Mifflin STEM Academy in Columbus, Ohio. On one occasion, Crochran was misbehaving, and Plummer was unable to help him manage his behavior. Another teacher suggested to Plummer that she could use a "body sock" on Crochran.[1] Shortly after stepping into the body sock, Crochran fell down, hitting his face and front teeth on the floor. He required endodontic work as a result of his fall.

Crochran brought suit, asserting claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights, and under the Individuals with Disabilities Education Act (IDEA), the Americans with Disabilities Acts (ADA), and § 504 of the Rehabilitation Act of 1973. He also brought several state-law claims. The district court granted the defendants' summary judgment motion with respect to Crochran's federal claims and dismissed without prejudice his state-law claims.

II.

"This court reviews the district court's grant of summary judgment de novo." *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018). "To fend off summary judgment, [Crochran] must present evidence that would permit a reasonable jury to find in [his] favor." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 678 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 56 (2017).

---

[1] A body sock is a therapeutic device that helps children with autism; it is made of stretchy material, and a student steps in and then the hole can be closed using Velcro, either covering the student's head or leaving it exposed.

III.

A.

Crochran first brings a claim under 42 U.S.C. § 1983, alleging violation of his rights under the Fourth and Fourteenth Amendments. "A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995) (internal quotation marks omitted).

There is no dispute that Plummer was acting under color of state law. Thus, the analysis of Crochran's § 1983 claim focuses on the first element: whether Plummer's actions deprived him of a right secured by the Fourth or Fourteenth Amendment. As explained below, Plummer's actions did not violate Crochran's constitutional rights. Moreover, Crochran cannot point to a policy or custom for which the board of education or school district should be held liable.[2]

1.

The Fourth Amendment's "prohibition on unreasonable searches and seizures" applies to conduct by public school officials. *See New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). The Tenth Circuit's analysis in *Couture v. Board of Education*, 535 F.3d 1243 (10th Cir. 2008), is instructive on Crochran's Fourth Amendment claim.

In *Couture*, a mother filed suit claiming that a school's use of time-out as a means of disciplining and controlling her "emotionally disturbed" son's behavior violated his Fourth Amendment rights. *Id.* at 1246. Upon review, the first question the Tenth Circuit asked was

---

[2] The defendants submit that the school district is not an entity that can be sued and that Crochran's vicarious liability arguments against the school district and board of education were not pled in his complaint. Although these might offer alternative rationales for our decision, Crochran has not shown that a reasonable jury could find a violation of any of his constitutional or statutory rights for which any defendant could be held liable.

whether a seizure had even occurred, explaining that courts "must think about seizures differently in the school context, as students are generally not at liberty to leave the school building when they wish." *Id.* at 1250–51. Instead, "[t]o qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Id.* at 1251.

Under this definition, the use of the body sock on Crochran constitutes a seizure. To begin, the therapeutic tool separated Crochran's person from the environment outside of the device, and an advertisement for the body sock describes it as being "designed specifically for spatial awareness through balance and resistance." Moreover, the body sock can be applied in a manner that a child's head is covered, and placing a student in such a gown is a greater limitation than that imposed by compulsory attendance.

Having found that a seizure occurred, we must now ask whether the seizure was unreasonable. The reasonableness of a seizure is a matter of law, which we review de novo. *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009). In determining whether the seizure was unreasonable, the court must consider: (1) whether the seizure was justified at its inception; and (2) whether the seizure was permissible in its scope. *See Couture*, 535 F.3d at 1252–53.

In this case, Crochran had been acting out, and other methods of behavior correction had failed. Plummer had seen body socks used with autistic children before and reasonably believed the sock could help Crochran. She did not force Crochran to step inside the sock; he voluntarily did so. Although the use of the body sock may have been negligent (a matter for the state court to determine), Crochran has not pointed to any evidence creating a genuine issue of fact that Plummer's use of the body sock was not justified in a constitutional sense. Further, our function

is "to evaluate whether the educators transgressed constitutional limits on their treatment of [Crochran], not whether their action comported with proper educational policy."

Moreover, the seizure was permissible in its scope. "A seizure is 'permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure] and not excessive[ ] . . . in light of the age and sex of the student and the nature of the infraction.'" *Id.* at 1253 (alterations in original) (quoting *T.L.O.*, 469 U.S. at 342).

Although the court in *Couture* relied heavily on the fact that time-outs were specifically prescribed by the student's individualized educational program (IEP), whether a body sock was specifically permitted to be used on Crochran remains an open question. In his brief, Crochran makes much of the fact that a body sock was not prescribed by his IEP. However, his IEP did state that he needed occupational therapy "to address his sensory processing," and a body sock is a therapeutic tool designed to help autistic children with sensory needs.

Plummer's use of the body sock was reasonably related to the object of the seizure—calming Crochran down and trying to help him control his behavior—and was not excessive given the circumstances. Accordingly, Crochran has failed to demonstrate that a genuine issue of material fact exists on his Fourth Amendment claim, and the district court properly awarded summary judgment to the defendants on this claim.

2.

"The Due Process Clause of the Fourteenth Amendment protects individuals from the arbitrary actions of government employees, but 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"[3] *Gohl*, 836 F.3d at 678 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Here, we must ask "whether the force applied

---

[3] Crochran has abandoned his equal-protection arguments on appeal.

caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." *Id.* (internal quotation marks omitted).

When determining whether actions shock the conscience in the public-school context, we consider, among other factors: (1) whether there was a pedagogical justification for the use of force; (2) whether the force used was excessive to meet the legitimate objective in this situation; (3) whether the force was applied in a good-faith effort to maintain or restore discipline or was instead applied maliciously and sadistically for the very purpose of causing harm; and (4) whether there was serious injury. *Id.* at 678–79.

First, a legitimate pedagogical reason justified Plummer's use of the body sock. Crochran's IEP described him as an autistic student who required "heavy work sensory warm up or a reward system to be successful [with] fine motor or visual motor tasks." Body socks are used to help autistic students with sensory needs. The deposition testimony of multiple witnesses confirms this conclusion. For instance, another teacher testified that a body sock helps children who are "sensory seeking" and is a "sensory tool used to put pressure on a child."

Second, Plummer did not force Crochran to enter the body sock. Instead, the parties agree that Crochran willingly stepped inside the device. Similarly, as to whether the force was applied in good faith, Crochran has not pointed to any evidence that Plummer asked him to use the body sock so that he would be injured or harmed.

This leaves the question of whether there was serious injury to Crochran, and it seems that needing root canal therapy after a fall does qualify as a serious injury for purposes of this appeal. However, because only one factor favors Crochran, the factors taken together compel a finding that Plummer's actions did not shock the conscience.

As the district court aptly noted, "Drawing all justifiable inferences from Plaintiffs' assertions, at best, the evidence speaks to a potential claim for negligence." Because the evidence would not permit a jury to find in favor of Crochran on his due process claim, the district court properly granted summary judgment to Plummer and the other defendants on that claim.

## B.

"The IDEA offers federal funds to [s]tates in exchange for a commitment: to furnish a 'free appropriate public education' . . . to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). Crochran conceded below that he does not have a claim under the IDEA, and he proffers no persuasive arguments on appeal that such a claim exists. And, in any case, because Crochran's injuries were "non-educational in nature," his claim does not fall under the IDEA. *F.H. v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014). In this posture, the district court properly granted summary judgment to the defendants on Crochran's IDEA claim.

## C.

"The Americans with Disabilities Act and the Rehabilitation Act combat discrimination against disabled individuals." *Gohl*, 836 F.3d at 681. When none of the differences between the ADA and § 504 of the Rehabilitation Act are at issue, as in this case, we may analyze the claims together. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

In order to state a claim under either the ADA or § 504 against a school receiving federal financial assistance, a plaintiff "must show that he or she is (1) disabled under the statute, (2) otherwise qualified for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his disability." *Id.* (internal quotation marks omitted). To prove discrimination in the education context, a plaintiff must show "something more than a mere failure to provide the free appropriate education required by" the IDEA. *Id.* (quoting *Sellers v. Sch. Bd.*, 141 F.3d 524, 528–29 (4th Cir. 1998)). "Surmounting that evidentiary hurdle requires that either bad faith or gross misjudgment must be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013) (quoting *Campbell v. Bd. of Educ.*, 58 F. App'x 162, 167 (6th Cir. 2003)).

In this case, Crochran's claims fail because he has not pointed to any evidence that "he was discriminated against, excluded, or denied the benefits of his special education program." *Gohl*, 836 F.3d at 682. As explained above, although Plummer's actions may have been negligent, they do not give rise to the statutory violations that Crochran claims. For these reasons, the district court properly granted summary judgment on Crochran's ADA and § 504 claims.

IV.

As a final matter, Crochran makes numerous arguments relating to evidence that he claims the district court failed to properly consider. For example, he argues that his expert witness's testimony creates genuine issues of material fact. However, the evidence Crochran attempts to offer in his brief, at best, makes out a case for negligence. The proffered evidence does not permit a reasonable jury to find in his favor on the constitutional and statutory claims alleged in this

action.  Accordingly, we affirm the district court's entry of summary judgment to Plummer and

the other defendants on each of Crochran's federal claims.

AFFIRMED.